STATE of Missouri, Respondent,

v.

Thomas HENDERSON, Appellant.

No. 36882.

Missouri Court of Appeals,
St. Louis District,
Division Four.

Dec. 28, 1976.

Motion for Rehearing or Transfer
Denied Feb. 16, 1977.

Application to Transfer Denied
April 11, 1977.

**142**

Timothy A. Braun, Public Defender, Clayton, for appellant

John C. Danforth, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for respondent.

ALDEN A. STOCKARD, Special Judge.

Thomas Henderson was found guilty by a jury of robbery in the first degree by means of a dangerous and deadly weapon. He was charged pursuant to § 556.280 RSMo 1969 as a second offender and was sentenced by the court to imprisonment for a term of ten years. This appeal followed. We affirm.

Appellant does not challenge the sufficiency of the evidence. We need only state that a jury reasonably could find that on June 23, 1973, appellant entered the Quick Shop at 1923 Hanley Road in St. Louis County, and by use of a .45 caliber automatic pistol took money from the cash register, which was under the control of Mrs. Josephine Snow, the manager, and from the billfold of Mr. Arthur Snow, her husband and a part time employee.

Appellant first asserts that the trial court committed reversible error in denying his motion for a mistrial when on two occasions the prosecuting attorney referred to photographs, one of which was of appellant, as "mug shots." Appellant argues that this reference (a) "indicated that [he] had prior criminal involvement;" (b) "prejudiced defendant as inadmissible evidence of prior arrest;" and (c) "violated a protective order."

Prior to the use of the term "mug shots" by the prosecutor, Mrs. Josephine Snow had testified that immediately after the robbery she called the police, an officer then talked to her and obtained a description of the robber, and a few hours later the officer returned with photographs of four individuals, one of which consisted of a front and side view of appellant. Mrs. Snow testified that the two views of appellant were "the ones that the policeman brought to us" and that they were pictures of the person who robbed her. Therefore, at the time the references were made to "mug shots," the jury knew, as appellant admits in his brief, that "the four pictures which [the police officer] brought back with him were at the time of the robbery of the Quick Shop available to the police and therefore had not been taken as a result of the present charge." For this reason, insofar as it may be argued that the use of the term "mug shots" indicated that the photograph of appellant was a part of the police records and for that reason implied that appellant had a prior criminal record and had previously been arrested, the prosecutor told the jury nothing it did not already know.

On each occasion when the term was used, appellant asked only for a mistrial. The court indicated it would give other relief because, following the first usage, without a request it admonished the jury to disregard the question in which the term was used.

Because the use of the term did not tell the jury anything it did not already know, and because of the opinions of this court in *State v. Harris,* 534 S.W.2d 516 (Mo.App. 1976); *State v. Carson,* 501 S.W.2d 503 (Mo. App.1973); and *State v. Rutledge,* 524 S.W.2d 449 (Mo.App.1975), as stated in

*State v. Barnes,* 536 S.W.2d 932, 933 (Mo. App.1976), "further discussion of this 'mugshot' issue would have little, if any, precedential value." As in the *Barnes* case, there was no direct reference to either prior arrests or convictions. We see no special significance to the fact that a so-called protective order had been made. There was nothing to indicate a deliberate and intentional violation of that order.

■ "Every error which might occur in the trial of a case [assuming error in the circumstances of this case, of which we have substantial doubt] does not necessarily require the granting of a mistrial," *State v. Smith,* 431 S.W.2d 74, 82–83 (Mo.1968), and the drastic remedy of a mistrial "should be exercised only in extraordinary circumstances," *State v. James,* 347 S.W.2d 211, 214 (Mo.1961), and "only when the incident is so grievous that the prejudicial effect can be removed no other way." *State v. Camper,* 391 S.W.2d 926 (Mo.1965). The trial court did not consider the incident warranted the granting of a mistrial, a matter in which it has considerable discretion. The proper function of an appellate court in this situation is to determine whether, as a matter of law, the trial court abused its discretion, and it clearly did not.

■ Appellant next asserts that the trial court "committed reversible error by departing from its prescribed role as impartial administrator of justice in commenting in the presence of the jury that an objection by [appellant's] attorney was 'ridiculous.'" The comment was made in regard to a request for a mistrial during the voir dire examination and not concerning an objection. The only relief requested was that "the court's comment on my objection * * be noted for the record."

Appellant received all the relief requested, and other than the issue of whether the trial court should have granted a mistrial without a request therefor, appellant has preserved nothing for appellate review. *State v. Cheatham,* 340 S.W.2d 16 (Mo. 1960); *State v. Holmes,* 419 S.W.2d 15 (Mo. 1967); *State v. Platt,* 525 S.W.2d 637 (Mo. App.1975). This is not the kind of occurrence that calls for the application of Rule 27.20(c), and it certainly does not at the appeal stage justify a reversal of the judgment; the only relief now available. We consider this incident trivial in nature, and our review of the entire record calls for the comment that the trial court exercised commendable restraint during the entire trial.

■ Appellant's third contention is that the trial court erred in "permitting the prosecutor in voir dire and in closing argument to explain to the jury * * * that 'reasonable doubt' does not mean 'beyond a shadow' or 'beyond any doubt.'" He asserts this was reversible error because "in a close case" such an explanation "improperly stated the law, confused the jury, and lessened the State's burden of proof.

■ We first comment that we do not consider this to be a "close case." Next, we find no incorrect statement of the law. Aside the issue of whether it was within the province of the prosecutor to make the remarks during the voir dire examination, he was legally correct when he said that reasonable doubt does not mean "beyond a shadow" or "beyond any doubt." Third, every objection made by appellant to the comments of the prosecutor during the voir dire concerning reasonable doubt was sustained by the court. The only other relief requested was a mistrial, and this is the incident that brought forth the comment of the court previously discussed, that the request was "rediculous." The only issue on this appeal as to the comments during voir dire is whether the trial court committed prejudicial error in refusing appellant's request for a mistrial, and it obviously did not. A comment however is appropriate. As stated in *State v. Van,* 543 S.W.2d 827 (Mo.App.1976), a case pertaining to comments by the prosecutor during the voir dire examination, it is not the prerogative of counsel to inform the jury as to the law. Also, the voir dire examination of the jury is not the occasion for argument. There was some overstepping in this case as to each of these matters, but in the circumstances no prejudice to appellant resulted.

Reversal of the judgment is not called for nor is it appropriate.

We turn now to the complaint as to oral argument. The following occurred:

"Mr. Dittmeier [prosecutor]: I talked to you on voir dire about following the instructions. You have to find him guilty beyond a reasonable doubt. Read the instructions. The burden is on the State. Again, the word reasonable is in there. If it was the law that you had to find him guilty beyond the shadow of a doubt—

"Mr. Braun: Your Honor, I object to his commenting on the burden of proof.

"The Court: Overruled.

"Mr. Dittmeier: If you had to find him guilty beyond the shadow of a doubt, I'd say shadow of a doubt, if that's the law. That is what we would say, but it says reasonable doubt. If it said proof beyond any doubt, if that was the law, I'd say beyond any doubt, but it is not.

"Mr. Braun: Judge, I object to him continuing to comment on this * * *."

Under the burden of proof instruction, (MAI–CR 2.20) the court instructed the jury that the defendant is presumed to be innocent and that this presumption places on the State the burden of proving beyond a reasonable doubt that the defendant is guilty. In the Notes on Use under this instruction it is stated that the *Court* may not further define reasonable doubt.

■ The Notes on Use, however, do not purport to limit counsel in oral argument. Such limitations as exist are by reason of the application of the general rules pertaining to the scope of oral argument. But, see, *State v. Belleville*, 530 S.W.2d 392 (Mo. App.1975), and *State v. Sanders*, 541 S.W.2d 782 (Mo.App.1976). There is no occasion to determine whether under the applicable rules this was permissible argument because, assuming that it was not, it was not prejudicial. What was said as to the meaning of the term reasonable doubt was legally correct, and no jury composed of reasonably intelligent men and women could have been confused or mislead by the argument.

Appellant's final point is that the trial court erred in denying his "motion to suppress the introduction at trial of any testimony of (A) the selection of [his] picture by the Snows on June 25, 1973 (B) the identification of the defendant by the Snows at the video tape confrontation on February 18, 1974, and (C) the identification of [him] by the Snows in Court at the trial." He asserts that each identification confrontation, individually and cumulatively, denied him due process because (1) the confrontations were so substantially suggestive that they were conducive to misidentification, (2) the State did not bear its burden of showing that the in-court identifications had an independent source, and (3) no court specifically ruled that the in-court identifications had an independent source.

Prior to trial appellant filed a "Motion to Suppress Identification." At the hearing thereon appellant presented no evidence except the testimony of one of the three persons, other than appellant, who was in the lineup viewed by the Snows by use of closed circuit television. That testimony pertained only to the manner in which the lineup was conducted. Although in the motion to suppress it was requested that the court find that the out-of-court identification of the picture of appellant and the identification of appellant at the lineup were so "inherently suggestive and conducive to misidentification" that they "fatally infect[ed] any subsequent in-court * * * identification," no evidence was presented at the hearing on the motion pertaining to use of the photographs or whether there existed a factual basis for identification independent of the photographs or lineup procedures. It is sufficient to say, as found by the trial court, that the evidence presented did not justify the sustaining of the motion. Appellant's point is limited to the contention that the court erred in denying that *motion*, and that contention certainly has no support in the record.

Appellant argues, notwithstanding the limited nature of his point, that the trial court erred in *admitting into evidence* the testimony of Mr. and Mrs. Snow that they

(a) identified the photograph of appellant as a picture of the man who robbed them, (b) that they identified appellant in the lineup, and (c) that they identified appellant in the courtroom as the robber. His argument is based on the reasons advanced in his point as to why the motion should have been sustained.

We first note that at trial appellant made no objection to (a) the testimony of Josephine Snow that she identified appellant in a lineup, or (b) to the in-court identification of appellant as the robber by Josephine Snow or by Arthur Snow. Before trial appellant requested a "continuing objection to the suggestive nature of the identification process," but not only did the court not agree to such a procedure, it clearly indicated the contrary. When asked immediately thereafter if it was ruling that the "identification procedures * * * were suggestive or not suggestive," the court replied that the issue was not then before it and that "you [appellant] can raise it again if you deem appropriate." The testimony set out above to which no objection was made at trial is not preserved for appellate review. *State v. Rice*, 522 S.W.2d 656 (Mo.App.1975); *State v. Stavricos*, 506 S.W.2d 51 (Mo.App.1974); *State v. Brown*, 527 S.W.2d 15 (Mo.App.1975); *State v. Bishop*, 529 S.W.2d 165 (Mo.App.1975).

We shall first consider the contention concerning the testimony of Josephine Snow and Arthur Snow that they identified appellant from his photograph as the robber. The contention on this appeal is that the "display of [his] picture to the Snows was unduly suggestive."

Appellant first objected to "any reference to these photographs" for several reasons not material on this appeal. He then stated: "I'd like to renew my pretrial written motion suppressing the identification by these photographs as being tainted by the identification process as being a suggestive identification process *as a matter of law*." (Italics added.)

The use of photographs for the purpose of identification, without some evidence that the procedures employed were unduly suggestive, does not as a matter of law result in the process being improperly suggestive. *State v. Wallace*, 504 S.W.2d 67 (Mo.1973). Appellant cannot now on appeal contend that the admission of the testimony was error. There was no evidence at the hearing on the motion to suppress which would indicate that under the circumstances the process of showing the photographs was unduly suggestive, and at the time the above objection was made, or perhaps it should be called a renewal of the motion to suppress, there was no evidence before the court to indicate any improper or suggestive procedure. Mrs. Snow then without further objection identified the photograph of appellant as a picture of the person who was the robber.

During the direct examination of Arthur Snow he was shown the photograph of appellant which was displayed to him shortly after the robbery. Mr. Snow testified: "that's the photograph I picked out." Appellant then objected as follows: "I'm going to object to that, your Honor, once again for the record on the basis of the former objection." The only "former objection" to the testimony of this witness was that an answer constituted "evidence of a crime uncharged." Mr. Snow then testified without further objection that the person shown in the pictures, which were admittedly of appellant, was the robber.

Both Mr. and Mrs. Snow had an adequate opportunity to view the robber at the time of the robbery. Each was shown photographs of four persons, apparently selected by the police as the result of the description of the robber furnished by Mr. and Mrs. Snow. Each immediately selected the photograph of appellant. This is not the situation where the police had a person in custody and showed a photograph of that person to the victim either alone or with other photographs. There is no indication that any suggestions were made by the police, or that the pictures were so dissimilar that only the photograph of appellant was in accord with the description received from the victims. There is no basis to

conclude that the display of the photographs was in any way suggestive or improper.

The remaining issue is whether there is merit to appellant's contention that the lineup was unduly suggestive. As previously noted, there was no objection when Mrs. Snow testified that she identified appellant in the lineup. She viewed the same lineup as did Mr. Snow, but when he subsequently testified appellant stated; "On the basis of my pretrial motion that the lineup was unlawfully suggestive and as a matter of law should be excluded, I'd like to renew it at this time." At that time the only evidence at the trial concerning the lineup before the court was that of Mrs. Snow on cross examination, and it can fairly be said that it did not indicate anything suggestive or improper in the procedure.

■ It is true that the lineup occurred almost eight months after the robbery, but this resulted from the fact that appellant was not apprehended by the police until then. Appellant emphasizes certain physical differences between appellant and the other participants, such as age, height and weight. Apparently one of the persons in the lineup had only one arm, but Mr. and Mrs. Snow viewed the lineup on a television screen from a closed circuit and according to Mr. Snow he did not "see any of their arms or hands" because "they [apparently the persons operating the equipment] didn't go down that far." Mrs. Snow was not questioned about this. There is no evidence that either Mr. Snow or Mrs. Snow observed any variations between the lineup participants that would indicate that appellant should be selected. See *State v. Ealey*, 515 S.W.2d 778 (Mo.App.1974); *Gaitan v. State*, 464 S.W.2d 33 (Mo.1971); *State v. Britt*, 504 S.W.2d 38 (Mo.1973). The lineup was not unduly suggestive, appellant's contentions concerning it are without merit, and further discussion concerning it would have no precedential value.

The judgment is affirmed.

SMITH, C. J., and NORWIN D. HOUSER, Special Judge, concur.