**STATE of Missouri, Respondent,**

v.

**Aaron JONES, Appellant.**

**No. 62351.**

Supreme Court of Missouri,
Division No. 1.

May 11, 1981.

James L. McMullin, Kansas City, for appellant.

Jay D. Haden, Asst. Atty. Gen., Jefferson City, for respondent.

WELBORN, Commissioner.

A jury in the Jackson County Circuit Court found Aaron Jones guilty of murder in the second degree and robbery in the first degree with a deadly weapon. Acting under the Second Offender Law, the court sentenced the defendant to life imprisonment for murder and to 25 years' imprisonment for robbery, the sentences to run consecutively. This appeal followed.

On the afternoon of October 25, 1976, appellant Jones and Marvin Williams went to the Eastwood Hills Animal Clinic on Highway 50 in Kansas City. According to Williams, it was their intention to rob the clinic at that time, but because, after entering, they were uncertain as to the number of people who might be around, they merely asked the veterinarian owner about the cost of having a dog's ears clipped.

Jones, Williams and appellant's brother, Lavance, returned to the clinic on the night of October 25. James Burkholder, the night man on duty, responded to their knock on the door. When he opened the door, the three men rushed in, Aaron and Lavance with guns. Burkholder was forced to lie on the floor and his wallet taken from his pocket and $30 removed from it. Aaron and Williams ransacked the place while Lavance stood guard over Burkholder. Burkholder was taken into the kennel area and, after an argument between appellant and Lavance about killing him, appellant emptied his weapon into Burkholder's body. Lavance also fired into Burkholder's body.

Burkholder's body was discovered by an employee of the clinic who arrived there at around 6:30 A.M. the following morning. An autopsy revealed eight bullet wounds from at least two different caliber weapons.

At approximately 4:00 P.M., October 26, 1976, Prairie Village, Kansas police officers arrested appellant and Williams who were in an automobile. Arresting officers took a .22 caliber pistol from Williams. No weapon was found on appellant. Ballistic tests showed that the weapon had fired some of the bullets found in Burkholder's body.

According to Kansas City police officers, appellant, in response to their questioning on October 28, admitted participating with Williams in the robbery of the clinic. Appellant said that Williams fired the shots which caused Burkholder's death.

At appellant's trial, Williams testified for the state according to the statement above as to the facts of the occurrence.

On this appeal, a single ground is asserted by appellant as grounds for reversal of the convictions.

All of the evidence at the trial was produced by the state. The defense strategy was an attack upon the credibility of the state's witnesses, particularly Williams. Williams admitted that in the 24 hours preceding the clinic robbery, he had committed 18 armed robberies, one kidnapping and one rape. According to Williams, he made a

deal with the police and prosecutor under which he agreed to testify against Jones in return for dropping all charges against Williams except three to which he would plead guilty and receive a 20-year sentence. Cross-examination of Williams produced numerous discrepancies in his account, on previous occasions, of the occurrence. Defense counsel's closing argument was basically an attack upon Williams' credibility, along with that of police officers.

In his final argument, the prosecutor stated:

"* * * But don't tell me this and don't let it be said among your number, 'Oh, I believe he did it, I believe he was involved but the State didn't prove it.' You can't say that, because each one of you swore before Almighty God before this case started that 'I have no belief one way or another about his guilt or innocence.' Didn't you take that oath? You did. You started from zero, not believing anything. And if you now believe he did it, the only thing that has happened from the time you took that oath to this minute is the State's case and evidence. You're not permitted to say, 'I don't believe they proved it,' because if you believe he did it and that belief is reasonable, he is guilty beyond a reasonable doubt."

Defense counsel objected that the prosecutor was trying to define reasonable doubt. The objection was overruled. The prosecutor then continued:

"I know I was loud enough but I'm not sure you heard all of what I said so if you permit me, I would kind of like to go over that again. It's not that tricky, but it has to do with the reasonable doubt part. When we started out, we asked you, 'Does anybody think this guy is guilty just because he is sitting here or for any reason at all,' and we say, 'Okay, now we are asking you, if you believe that he is presumed innocent and nobody believes he is guilty, right, so we start out believing nothing, neither that he is guilty, we believe he is not guilty. So then you start out from zero. Then you get to the point where you form the belief that he is guilty. If the only thing that has happened from the time you started the case to this point is the State's evidence, and if you believe he is guilty from the State's evidence, and that's all that has happened, you have to be finding him guilty because of the State's evidence. If the belief that he is guilty is reasonable, you have found him guilty beyond a reasonable doubt."

Further objection was again overruled.

In passing on the defendant's motion for new trial, the court stated that the prosecutor's argument "at best [was] borderline" and would not be allowed in the future. He concluded, however, that the jury would not have been confused or misled by the argument "if, in fact, it was a definition of reasonable doubt." He concluded that the weight of the evidence against the defendant was strong, evidenced by the fact that on two other occasions a jury had found the defendant guilty of the same crime.

With the advent of MAI–CR and the abbreviated reference to "reasonable doubt" found in MAI–CR (1st and 2d) 2.20, prosecutors have apparently deemed it necessary to step into the situation and "assist" jurors in the application of the phrase. In *State v. Belleville*, 530 S.W.2d 392 (Mo.App. 1975), the prosecutor resurrected the language, quite pointedly rejected upon the adoption of MAI–CR (see Richardson, "Charge not Evidence; Presumption of Innocence; Burden of Proof; Reasonable Doubt," part III, pp. 9–17, *The Missouri Bar Committee Comments on Approved Criminal Instructions* (1974)), to the effect that reasonable doubt meant "* * * not merely the possibility of innocence, but * * * a substantial doubt touching upon the defendant's guilt." Objection to the argument was overruled. The court of appeals, relying upon the restriction in the Notes on Use to MAI–CR 2.20 against further definition of the term "reasonable doubt," found that the argument was improper. The court noted, however, that the language of the prosecutor "* * * was part of the burden of proof instruction that had been used

and approved by Missouri Courts since 1857." 530 S.W.2d 395, fn. 2. The court held the prosecutor's statement was not reversible error because the prosecutor did not dwell unduly on the matter and because there was strong evidence of the defendant's guilt.

In *State v. Sanders,* 539 S.W.2d 458, 464[6] (Mo.App.1976), the prosecutor's use of similar language was held improper, but, relying upon *Belleville,* not prejudicial error.

In *State v. Sanders,* 541 S.W.2d 782, 784[1, 2] (Mo.App.1976), the prosecutor's argument, reviewed under the plain error rule because of the lack of trial objection, was to the effect that "reasonable doubt" does not mean " * * * beyond any doubt. There aren't many things in this world that can be proved beyond any doubt, and that certainly isn't the state's burden in a criminal case." The court assumed the impropriety, under *Belleville,* of the statement, but again found no plain error in view of the brevity of the prosecutor's statement and the weight of the evidence of guilt.

In *State v. Van,* 543 S.W.2d 827, 830[1, 2] (Mo.App.1976), the problem arose because the prosecutor, on voir dire of the jury panel, stated that he was " * * * not required to prove this man guilty beyond all doubt." The prosecutor further stated that the instructions would explain "reasonable doubt" to the jury. The court found the remarks of the prosecutor improper. "For more than fifty years it has been the law of this State that 'It is not proper for counsel to state any law applicable to the case not embodied in the written instruction to the jury.' *State v. Davis,* 284 Mo. 695, 225 S.W. 707, 710 (1920)." 543 S.W.2d 830. The court found no prejudicial error, noting that, although the statement that reasonable doubt would be explained was inaccurate, the explanation made by the prosecutor of the term was not incorrect.

In *State v. Henderson,* 547 S.W.2d 141, 144[7] (Mo.App.1976), the prosecutor's argument, to which a trial objection was overruled, was to the effect that "reasonable doubt" does not mean "beyond the shadow

of doubt" or "beyond any doubt." The court, noting that limitation upon such argument arises "by reason of the application of the general rules pertaining to the scope of oral argument," not the Notes on Use to MAI–CR 2.20, found it unnecessary to determine whether the argument was permissible, finding it nonprejudicial. The court observed: "What was said as to the meaning of the term reasonable doubt was legally correct, and no jury composed of reasonably intelligent men and women could have been confused or mislead (sic) by the argument." Id.

In *State v. Harper,* 553 S.W.2d 895 (Mo. App.1977), the prosecutor argued that beyond a reasonable doubt is " * * * not beyond all doubt whatsoever" "not beyond any unreasonable doubt, rather a very realistic burden." (Whether the remarks were objected to at trial is not clear.) The court found the remarks not reversible error because they were brief and the prosecutor properly discussed reasonable doubt in relation to the evidence. The court, however, saw fit to admonish prosecutors against continuing " * * * to skate on thin ice." 553 S.W.2d 898[7, 8].

In *State v. Wilbon,* 561 S.W.2d 133 (Mo. App.1978), defense counsel's objections on the grounds that the prosecutor was attempting to define reasonable doubt were sustained in the trial court and no further relief was requested. On appeal, the contention was that the argument was plain error, requiring the court, sua sponte, to take corrective action. The court of appeals rejected any claim of error, characterizing the prosecutor's limited remarks as a discussion of reasonable doubt, not a definition. "The law does not foreclose the prosecution from arguing the facts as they pertain to the court's instructions nor prevent pointing out to a jury that some slight doubt about some issue or fact is not necessarily a reasonable doubt." 561 S.W.2d 134.

In *State v. Disandro,* 574 S.W.2d 934 (Mo. App.1978), the prosecutor's inquiry on voir dire—"Is there anybody here that would require proof beyond any doubt as opposed to—" was interrupted by an objection

which was overruled, but the inquiry was apparently not completed or pursued. The court found the "incomplete, unrepeated query" nonprejudicial. The court took note of the "numerous opinions which criticize overzealous prosecutors for attempting to define 'reasonable doubt.'" 574 S.W.2d 935.

In *State v. Fleming*, 577 S.W.2d 174 (Mo. App.1979), the court, taking note of the distinction between definition and discussion of reasonable doubt, concluded that argument that it did not mean "beyond a shadow of a doubt" or "beyond any and all doubt" fell within the bounds of proper argument. 577 S.W.2d 176[3, 4].

In *State v. Hammond*, 578 S.W.2d 288 (Mo.App.1979), the prosecutor's argument that "anything less than reasonable doubt would not be enough," nor would "a mere doubt of some sort" but that reasonable doubt must be based on "reason" was held "a permissible discussion rather than a definition." 578 S.W.2d 290[5, 6].

In *State v. Simmons*, 602 S.W.2d 13 (Mo. App.1980), inquiry on voir dire "Is there anybody here that feels that they would require proof beyond any doubt?" was held not to have been a definition of reasonable doubt and not erroneous, phrased as it was as a question and not dwelt upon by the prosecutor. See also *State v. Lumsden*, 589 S.W.2d 226 (Mo. banc 1979).

Finally, in *State v. Burnfin*, 606 S.W.2d 629 (Mo.1980), argument, apparently by the same prosecutor as in the present case, along very similar lines to that here involved, was held not to entitle the defendant to relief under the plain error rule, no objection to the argument having been made in the trial court. In *Burnfin*, the prosecutor told the jury: "If you think he did it and if that thought is reasonable, we have proved him guilty * * *." 606 S.W.2d 631.

In this case, the prosecutor went further than he did in Burnfin, telling the jury that " * * * if you believe he did it and that belief is reasonable, he is guilty beyond a reasonable doubt."

Three things stand out about the argument in this case: First, the prosecutor told the jury that a "reasonable belief" satisfied the requirement of proof beyond a reasonable doubt. In so doing, he strayed into the language of civil proceedings where the burden of proof is submitted in terms of whether or not the jury believes the propositions in issue. MAI 3.01. The term "reasonably" is not employed in that connection, but it is inferred and certainly adds nothing to the requirement of belief. Thus, the prosecutor in this case undertook to define reasonable doubt in wholly erroneous terms. See *State v. Mahly*, 68 Mo. 315, 319–320 (1878), holding that prosecutor's argument —"The preponderance of testimony was in favor of conviction * * *, and upon such evidence they (the jury) must convict"— was "manifestly and palpably erroneous." (*Mahly* has been held no longer the law as to other issues in the case. See *State v. Brookshire*, 353 S.W.2d 681, 689[21, 22] (Mo. 1962).) Second: The prosecutor's statement was promptly objected to and the objections were overruled, giving the argument the imprimatur of the trial court. Third: The prosecutor was not content with a passing reference to the subject, but upon the overruling of defense objection, proceeded to repeat his erroneous definition of reasonable doubt.

Neither *Belleville* nor *Burnfin*, invoked by the state, can justify disregard of the error in this case. The evidence of guilt was strong, but the rule announced in *State v. Degraffenried*, 477 S.W.2d 57 (Mo. banc 1972) may not be applied to excuse as harmless the error in this case.

Reversed and remanded.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

All of the Judges concur.