STATE of Missouri, Respondent,

v.

David GIANNICO, Appellant.

No. 63089.

Supreme Court of Missouri,
En Banc.

Dec. 13, 1982.

Mark D. Johnson, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Jay Haden, Asst. Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

RENDLEN, Judge.

Indicted for murder, second degree, (§ 559.020, RSMo 1969), defendant was convicted by the jury of manslaughter and sentenced to a term of ten years with the Department of Corrections. Affirmed in the Missouri Court of Appeals, Western District, the cause was brought here and by opinion in Division the conviction was again affirmed. Thereafter the cause was transferred to the Court en Banc where it has been reviewed as though on original appeal, Mo. Const. Art. V, § 10, and once more the conviction is affirmed.

The evidence established that on October 24, 1977, defendant with two other men, Gregory Holloway and Donald Heitman, went to the Cloverleaf tavern on "40 Highway." There, defendant was refused service because he had no identification, so he and Holloway went to the tavern parking lot where they met Peggy Carpenter who joined them in their car. They purchased beer and cigarettes and, at Peggy's request, went to her house in Independence, Missouri. Holloway, testifying for the prosecution, stated that he and Peggy went upstairs where they engaged in sexual intercourse. Peggy then invited defendant upstairs and sometime later he returned stating, "I think I killed her." This prompted Holloway to go upstairs, where he saw Peggy's body on the bed, and returning to the first floor, Holloway, with defendant's help, wiped the house of fingerprints then left.

On the day following, Holloway and defendant went to Lake Viking, some distance from Kansas City, where they listened to radio reports of the crime. Defendant testified that before he returned home the next day, he telephoned his brother "to see if anybody had been looking for us." During the next six weeks defendant remained in the Kansas City area to complete his parole on a charge of burglary.[1] On December 14 or 15, however, he left Kansas City for Los Angeles, California, and then to Miami, Florida. In January, 1978, Holloway implicated defendant which led to the issuance of a warrant for his arrest. From Miami, defendant traveled to Fort Worth, Texas, not returning to Kansas City until March, 1978, where he learned of the warrant for his arrest. Defendant testified his family consulted a lawyer and he then went to the State of Washington. By June, 1978, he had made his way to Texas where he was finally arrested, near Austin, by a Texas Highway Patrolman. The arresting officer testified that when apprehended defendant stated "The sorry bitch deserved it."

Two detectives from Independence were sent to escort defendant to Missouri and both testified that during the return trip defendant said he "remembered knocking some lady's running lights out in Independence." He said he knew that "Greg Holloway ... had spilled the beans on him." He further told the detectives that after he went in the bedroom with the victim he "maybe ... called her a bitch," that "This lady started hitting him," that he then "hit the lady a couple of times and he knew that he had killed her."

In his testimony defendant denied the killing and according to his version of the events, Holloway, not he, killed Peggy Carpenter.

■ For his first point on appeal defendant contends the court erred in overruling

1. Defendant was required to report to a parole officer and was prohibited from leaving the

state as a condition of parole.

his objection to a portion of the state's closing argument, which defendant claims misdefined the phrase reasonable doubt.

By MAI–CR2d 2.20, given as Instruction No. 4, the jury was told the presumption of innocence "places upon the state the burden of proving beyond a reasonable doubt that the defendant is guilty." The Notes on Use for this instruction provide that no other instruction shall be given further elaborating or attempting to define reasonable doubt.

Here, defendant relies upon *State v. Jones*, 615 S.W.2d 416 (Mo.1981), while the state relies principally upon *State v. Burnfin*, 606 S.W.2d 629 (Mo.1980). The challenged remark is much the same as those reviewed in the referenced cases.

No objection was made to the prosecutor's remark in *Burnfin*, and the Court considered the defendant's point under the plain error doctrine, stating at 631:

... We find some difficulty in determining precisely what the prosecuting attorney meant by the quoted argument, but we shall assume that it was improper as elaborating further upon or attempting to define reasonable doubt. However, by its instructions the court told the jury that it was "the Court's duty ... to instruct ... upon the law applicable to the case," and that it was the jury's duty "to follow the law as the Court gives it to you." The court gave the jury the approved instruction on reasonable doubt, MAI–CR2d 2.20. It was also told that the arguments of counsel did not constitute evidence, and that in their deliberations the jury should "be governed" by the evidence as they remembered it "and by the law as given in these instructions."

Assuming, as we have done, that the prosecutor's statement was improper, in view of the instructions that were given by the court, we cannot say as a matter of law that a jury composed of reasonably intelligent persons were confused or misled by the argumentative statement of the prosecutor so as to result in manifest injustice or a miscarriage of justice. (citations omitted).

In *Jones, supra,* the appellant promptly objected to the prosecutor's comment and the Court held that the prosecutor's remark constituted prejudicial error, reversed the second degree murder and first degree robbery convictions and remanded the case for a new trial.

In light of *Burnfin* and *Jones* we examine the record here. Defense counsel in his portion of closing argument stated:

Well, if you believe each and every piece of evidence that the State has presented, then there should be not only a reasonable doubt, *but a very great doubt* that the Defendant is *guilty of murder.* If you believe all of that evidence, *you may very well find him guilty of Manslaughter,* and I am not suggesting that you should believe that evidence—in fact, I intend to talk at some considerable length about that. If you, even if you believe everything that came from the witness stand by the State, and put on by Mr. Humphrey, then under the instructions the *defendant is still not guilty of murder in the second degree.* (Emphasis added).

The prosecutor responded to this argument by stating:

... This is a murder case or it is nothing. It is a murder case, or it is nothing.

Don't say "Peggy Joe Carpenter was a second-class citizen, so he is only guilty of Manslaughter". That is not fair. That is not justice.

When you took your oath, and when we questioned you on voir dire, you said that as a group, "We have no preconceived notions about this matter. We don't feel one way or the other, and we will be guided by the evidence". I pray to God that you do that. Don't let it be said that "We know that he did it, but you didn't prove it. We think that he did it, but you didn't prove it". You started this case even, feeling and thinking either "guilty" or "not guilty". *If you really reasonably think he did it, if you think he did it, and the thought is reasonable, that's reasonable doubt, that is Murder Second, and he is guilty.*

Don't say "But you didn't prove it", because if you have the thought that he is guilty—because you started out being fair, not biased, you all swore you were— and you think he is guilty and the thought is reasonable, the only reason you can think that is because of the evidence that you heard—

DEFENSE COUNSEL: I would object to that as being contrary to the instructions.

THE COURT: Overruled.

PROSECUTOR, CONTINUING: Between the time you were sworn and the moment you come to the thought that he is guilty, if you think he is guilty, and the thought is reasonable, that's how people get convicted." (Emphasis added).

■ That portion of the argument which defendant *now* claims was error is that emphasized above in the third-referenced paragraph of the prosecutor's argument but defendant did not object when the statement was made. Instead the statement to which objection was lodged and the trial court called upon to rule, was ". . . and you think he is guilty and the thought is reasonable, the only reason you can think that is because of the evidence that you heard." That statement was not objectionable and provides no basis for claim of error. It constitutes instead a permissible discussion of the evidence in the light of the reasonable doubt standard, *State v. Geer,* 624 S.W.2d 143, 147 (Mo.App.1981), and the law does not foreclose the parties "from arguing the facts as they pertain to the court's instructions nor prevent pointing out to a jury that some slight doubt about some issue or fact is not necessarily a reasonable doubt." *State v. Wilbon,* 561 S.W.2d 133, 134 (Mo.App.1978). Assuming, however, that when defendant finally objected, the objection was meant to relate to the earlier statement set forth and emphasized in the third-referenced paragraph and further that the trial court is to be faulted for not assuming that the objection was tardy and was intended to be directed to the statement contained in the earlier paragraph, we shall consider the contention as though

properly preserved rather than as plain error as was necessary in *Burnfin.* Nevertheless we find the rationale employed by the Court in that case sound and appropriate for application here. The Court in *Burnfin,* when examining the statement in final argument of the prosecutor "and if you have the thought, after hearing this evidence, that he's guilty and that thought is reasonable, we have proved him guilty, haven't we?," explained that it had some difficulty in determining precisely what the prosecuting attorney meant but "assume[d]" it was improper as attempting to define reasonable doubt. 606 S.W.2d at 929. However, the Court concluded "we cannot say as a matter of law that a jury composed of reasonably intelligent persons were confused or misled by the argumentative statement of the prosecutor. . . ." *Id.* at 631. Further, as noted in *State v. Belleville,* 530 S.W.2d 392, 395 (Mo.App.1975), the "record clearly demonstrates this is not a close case and the evidence of defendant's guilt is strong" and so it is in the case at bar. We conclude, unlike *State v. Jones, supra,* and *State v. Shelby,* 634 S.W.2d 481 (Mo.1982), the remarks complained of did not result in the deprivation of defendant's substantial rights or a fair trial.

This conclusion is reinforced by the result of the jury's deliberation. Both the prosecution and defense counsel directed the bulk of their argument to the issue of murder in the second degree. The challenged remark was made by the prosecutor while exhorting the jury to return a guilty verdict on that charge. Under the court's instructions, if the jurors did not believe from the evidence beyond a *reasonable doubt* that defendant was guilty of murder in the second degree they were required to find him not guilty of that charge and were then required to consider whether he was guilty of manslaughter. The verdict of manslaughter establishes that the jury found the state did not prove beyond a reasonable doubt that he was guilty of murder in the second degree. The result reveals the jury was not swayed by the prosecutor's comment, nor confused or misled in any manner.

■ Defendant's remaining contention relates to the court's refusal to allow his sister to testify, and stems from the following circumstances: At the conclusion of defendant's case, he requested his sister be called as a witness. It was conceded that his sister had been sitting in the courtroom during the trial, though the rule excluding witnesses from the courtroom had been invoked. Making an offer of proof, defendant stated the sister would testify, "that she advised the Defendant to, in approximately March of 1978, leave town and to be gone as long as he could manage to be gone." This advice, according to the offer of proof, was given after defendant's sister had talked with a lawyer "or someone who purported to be one." The state objected on the ground the sister's testimony was hearsay.[2] On that basis, the objection was sustained by the trial court.

Defendant asserts the trial court erred in this regard as this testimony should have been admitted to explain the incriminating inference that his extended out-of-state travels created, and he relies on *State v. Campbell*, 533 S.W.2d 671 (Mo.App.1976) to support his contention that this explanatory evidence was admissible. In *Campbell*, the court citing 22A C.J.S. Criminal Law, § 601, pp. 404–406, stated:

"... As a general rule, evidence explaining evidence previously introduced, or showing that the inference arising or sought to be drawn therefrom is not warranted, is admissible; ... This rule is especially applicable where accused seeks to explain incriminating evidence introduced by the state, and applies even though the evidence sought to be explained was improperly admitted. Common illustrations of the rule are found in the reception of evidence ... of flight, of the commission of other offenses...."

533 S.W.2d at 675.

While evidence of circumstances explaining flight is ordinarily admissible, a careful review of the record leads us to the conclusion the trial court did not commit prejudicial error by excluding the sister's testimony. First, there was independent evidence of flight the day after the killing and in December, 1977. The sister's testimony would not have explained that flight but could only have related events after March, 1978. Second, as the Court of Appeals for the Western District stated below: "[I]t is plain the evidence offered by the defendant would not have aided the defendant by offering an exculpatory explanation for his flight, but rather would have strengthened the state's position that defendant's absenting himself from Kansas City was to avoid arrest and prosecution for the Carpenter homicide." Defendant's point is without merit.

Affirmed.

WELLIVER, HIGGINS, GUNN and BILLINGS, JJ., concur.

DONNELLY, C.J., concurs in result.

SEILER, Senior Judge, dissents in separate dissenting opinion filed.

SEILER, Senior Judge, dissenting.

There is a conflict between what instruction no. 4 says is the burden of the state and what the prosecutor's argument says it is. Instruction no. 4 tells the jury it is the burden of the state to prove guilt beyond a reasonable doubt. The argument found not erroneous by the court does not require the state to comply with instruction no. 4. The argument ignores the burden of the state. The argument says that so long as the jury thinks he did it and the thought is reasonable, he is guilty. The jury is not required to believe first that the state has proved defendant's guilt beyond a reasonable doubt. How is the jury to choose between the law as declared by the instruction and the law as declared by the argument, particularly when the court overruled defendant's objection to it?

2. The state, at trial, stated it was not waiving its objection to the witness's violation of the order excluding witnesses. On appeal, the state and the appellant vigorously dispute whether the state waived that objection. We find it unnecessary, in light of our ruling on appellant's point, to reach that issue.

The fact that the jury acquitted defendant of second degree murder does not remove the conflict which exists between the instruction and the argument. The jury could well have believed that whatever the prosecutor said about what it takes to establish guilt and to satisfy reasonable doubt applied to all else that defendant was charged with, including manslaughter.

This is the third case in which the same assistant prosecutor has persisted in this type of treading on the edge of forbidden argument. We should put a stop to it now by reversing and remanding this case and making it plain that we mean what we say in the Notes on Use about not permitting the meaning of reasonable doubt to be elaborated upon or defined beyond the approved instruction. Otherwise we are embarking upon another never ending cat and mouse game where the prosecutors become increasingly venturesome and where by our refusal to call them to terms we encourage their efforts to gain a little additional advantage over what we have let them get by with the time before. Such an invitation is irresistible to prosecutors.

All this will accomplish is that cases involving questions of the propriety of arguments about reasonable doubt and what it takes to satisfy it will multiply and the appellate courts will spend more and more time in resolving each alleged transgression on a case by case basis to determine whether the prosecutor's conduct can be excused—either the courts must do that or succumb to the efforts to water down the presumption of innocence and the requirement of proof beyond a reasonable doubt. If anyone doubts the appellate effort which will be required, take a look at the time the courts have spent on deciding whether bold and persistent prosecutors have stepped over the line in their "direct versus indirect" references to the failure of the defendant to testify. An inordinate amount of judicial time is consumed in attempting to resolve such issues. Over ninety reported cases can readily be cited which involve in one form or another such arguments.

In my opinion this case, one of *preserved* error, is governed by *State v. Jones,* 615 S.W.2d 416 (Mo.1981). Here, as in *Jones,* the prosecutor told the jury that "... if you think he did it and the thought is reasonable, that's reasonable doubt ..." As in *Jones,* the prosecutor "undertook to define reasonable doubt in wholly erroneous terms". *Id.* at 420. Reasonable belief does not satisfy the requirement of proof beyond a reasonable doubt. As said earlier, the fact that the prosecutor was shooting for second degree murder does not render the argument harmless. The jury could just as well have believed the defendant was not guilty of second degree murder under the prosecutor's definition of reasonable doubt, but that defendant was, under the definition, guilty of manslaughter. How can we, with confidence, declare otherwise?

*State v. Burnfin,* 606 S.W.2d 629 (Mo. 1980) is distinguishable and is not controlling. The *Burnfin* case involved plain error, where under our rule, reversal must be found in manifest injustice or miscarriage of justice, neither of which was present in the case. In the case at bar the error is one of *preserved* error and reversal and remand does not require what was necessary to be found in *Burnfin.*

I respectfully dissent and would reverse and remand for a new trial.