STATE of Missouri,
Plaintiff-Respondent,

v.

Reginald JORDAN, Defendant-Appellant.

No. 64052.

Supreme Court of Missouri,
En Banc.

Feb. 23, 1983.
Rehearing Denied March 29, 1983.

Springfield Baldwin, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., John Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

ALMON H. MAUS, Special Judge.

The defendant was convicted by a jury of the crime of conventional second degree murder. § 565.004. He was sentenced to imprisonment for 35 years. The conviction was affirmed by the Missouri Court of Appeals, Eastern District. Upon the defendant's application the case was transferred to this Court under Rule 83.03. The basis for the transfer was the general interest in a question apparently involved in the case. That question concerns the admissibility of a prior consistent statement to rehabilitate a witness who had allegedly been impeached by an inconsistent statement made before the prior consistent statement. This opinion will borrow extensively from the perspicuous opinion of the Missouri Court of Appeals, Eastern District, written by Judge Robert G. Dowd.

The defendant does not question the sufficiency of the evidence. A brief resumé will be sufficient to cast the questions presented in this appeal. Evidence supporting the verdict shows the defendant and Wesley Glenn were homosexuals living together in Glenn's upstairs apartment. On July 3, 1979, Glenn was employed as a teacher in the public school system. During the afternoon of that day the defendant was visited at the apartment by Daryl Thomas (the deceased), Don Scott and Raymond Haynes. The four spent several hours together during the afternoon. Thomas propositioned the defendant. At approximately 2:00 p.m. the defendant brought Glenn home from work. The three visitors were in the yard. Glenn left to return about 5:45 p.m. Glenn apparently felt threatened by and resented the presence of Thomas. At Glenn's request, the defendant and Haynes drove Thomas and Scott, who were "living around", to the bus station. Glenn, the defendant, Haynes and one Antoine spent the evening in homosexual bars drinking heavily. In the meantime back at the bus station, Thomas prevailed upon Scott to return to Glenn's apartment so that he could visit the defendant. They arrived at the apartment at about 3:00 a.m., July 4, 1979. They went up the stairs on the outside of the house to what was called the back door. By knocking, Thomas awoke the defendant and Glenn who were in bed together.

The defendant told Glenn to stay in bed, that he would take care of it. The defendant then told Thomas and Scott to go around to the downstairs front door. The downstairs front door was actually two doors. The defendant armed himself with a carving fork and two knives. So armed, he went down to the front door. Thomas and Scott were in the front yard. The defendant opened the front door and went into the front yard. An argument developed between the defendant and Thomas. They wrestled to the ground. The defendant drew one of the knives and stabbed Thomas.

When Thomas got up and was fleeing by climbing over a fence around the yard, the defendant stabbed him two more times in the back. Thomas got over the fence. Although he apparently collapsed after doing so, he managed to cross the street where he lay on the pavement. The defendant pur-

sued him by going through a gate. He crossed the street and stabbed Thomas again and kicked him in the head as he lay on the pavement. By the time officers arrived Thomas had dragged himself under an automobile. The defendant told Scott he ought to also kill him. Thomas died a few hours later from ten stab wounds. Four wounds to the chest penetrated the pleural cavity. Others would have done so had they not been deflected by bone. The deceased had what was termed a defensive wound to his left forearm. The two wounds to the back appeared to the experienced medical examiner to have been delivered when Thomas was on his feet. One penetrated the muscles adjoining the spinal column to a depth of three inches.

Glenn heard the defendant yell, "He's dying". Glenn then went downstairs. He found the defendant, Scott and Thomas across the street. Glenn testified the defendant went back to the apartment, up the outside stairs and kicked in the glass in the inner door. The defendant then said to Glenn, "Don't say anything. We can beat this."

The defendant's version was that he feared Thomas and Scott were going to break in the upstairs door. So, he told them to go to the front door. He went to the front door and saw no one. He went back upstairs and got the carving fork and one knife. He returned to the front door which he opened. At first he saw no one. He then went into the yard and Scott stepped from behind a tree. Thomas approached him from behind, threatening to rape and kill him. Scott knocked the fork from his hand. Thomas threw a shirt over defendant's head. The shirt was found near the gate. The defendant then pulled a knife and when he and Thomas tussled and rolled on the ground, he stabbed Thomas. Scott did not participate in the struggle. The defendant denied stabbing Thomas as he went over the fence or as he lay on the pavement across the street. He denied that he kicked in the glass of the upstairs door. He admitted that he could have told an investigating officer that Thomas broke the glass in the upstairs door and that he then stabbed Thomas at the top of the stairs. An officer testified he made such a statement.

There was no blood found on the outside steps. Glass found on the defendant's pants matched the glass broken from the upstairs door. While in jail, the defendant wrote a letter to Glenn threatening to disclose Glenn's homosexuality to Glenn's employer and the newspapers if Glenn testified against him.

As stated, this case was transferred because the defendant asserted the trial court erred in admitting a prior consistent statement to rehabilitate a witness who had allegedly been impeached by an inconsistent statement made *before* the prior consistent statement. He contended that in approving such rehabilitation, the opinion of the Court of Appeals was in conflict with *Nielsen v. Dierking*, 418 S.W.2d 146 (Mo.1967).

This point of the defendant is based upon his hypothesis of the events at trial as follows. Glenn, on direct examination, gave the following testimony. After arranging for a neighbor to call an ambulance, he saw the defendant go up the outside stairs and break the glass in the inner door. Thereafter, the defendant said to him, "Don't say anything. We can beat this." On cross-examination, Glenn stated he did not remember telling an officer at the scene that he was awakened by the sound of breaking glass. He admitted that he did not tell the officer at the scene of the defendant's trip upstairs and following admonition. On redirect, over the defendant's objection of hearsay and cumulative, the state was permitted to show that at approximately 7:30 a.m., at the police station, Glenn gave a consistent handwritten statement which included a recitation of the defendant's trip up the stairs and admonition. That brief statement was admitted into evidence.

The defendant's attack upon this action of the trial court is many pronged. He cites no authority, but argues that Glenn was not impeached by his admission he did not remember telling the officer at the scene he was awakened by the sound of

breaking glass. Those interested can see *Huston v. Hanson,* 353 S.W.2d 577 (Mo. 1962); Annot., Denial of Recollection as Inconsistent, 99 A.L.R.3d 934 (1980). He argues that impeachment of Glenn by cross-examination without an affirmative admission of an inconsistent statement is an improper basis for the admission of a consistent statement. He cites *State v. Fleming,* 354 Mo. 31, 188 S.W.2d 12 (1945). Finally, he argues that even if Glenn had been impeached, the consistent statement referred to was inadmissible under *Nielsen.* See Annot., Corroboration—Consistent Statements, 75 A.L.R.2d 909 (1961); MAI–CR2d 3.52.

On the other hand, the state argues Glenn's testimony on redirect was proper under the doctrine enunciated in *State v. McKinney,* 475 S.W.2d 51 (Mo.1971). The court's attention has also been directed to authorities such as *Hanger v. United States,* 398 F.2d 91 (8th Cir.1968), approving a prior consistent statement made before the declarant had a motive to falsify. There is similar authority advocating or providing for the admission, within the discretion of the court, of consistent statements regardless of their sequence, so long as the declarant is subject to cross-examination. 4 Wigmore, Evidence § 1126 (Chadbourn rev. 1972); McCormick on Evidence § 50 (2d ed. 1972); Fed.R.Evid. 801(d); *United States v. Rios,* 611 F.2d 1335 (10th Cir.1979). However, it has been observed that making such statements admissible could cause a witness' credibility to become dependent upon the number of times he repeats the same story. *State v. Degraffenreid,* 477 S.W.2d 57 (Mo. banc 1972).

█ Unless this court is to issue an advisory opinion, this point of the defendant's must be disposed of without a reconciliation of the authorities cited and consideration of the intriguing questions mentioned. The point is resolved by a part of the defendant's cross-examination of Glenn that reads as follows:

"Q When you first talked to the police did you ever tell the police that Reginald Jordan went back upstairs and broke the glass out?

A No, I did not.

Q So it was only later that you told the police that?

A Right.

Q Is that correct?

A Right."

It was the defendant that first introduced into the case the fact that at the police station Glenn told the police the defendant went back upstairs and broke out the glass. Since the defendant made this subject pertinent to the trial, the state was properly allowed to show the circumstances of that statement. *State v. Nimrod,* 484 S.W.2d 475 (Mo.1972). The defendant's point is disposed of by an observation of this court in a recent case. "Pertinent to this claim is the holding that a defendant is not in a position to complain of the state inquiring about matters brought into the case by his own questions." *State v. Lue,* 598 S.W.2d 133, 138 (Mo. banc 1980). Also see *State v. Menard,* 331 S.W.2d 521 (Mo.1960).

Further, even if it could be said the trial court erred in admitting this cumulative evidence, which it did not, it was not reversible error. The defendant's guilt was established by the testimony of eyewitness Scott. It was corroborated by the testimony of Glenn. The defendant's tale of self-defense was refuted by the fact the defendant did not seek aid or to use the phone at Glenn's sister's downstairs apartment. Instead, he chose to arm himself and, when no one was even in sight, advance through two locked doors into the front yard. A statement of the defendant served not only to damage, if not destroy, the credibility of his testimony of self-defense in the front yard, but also to corroborate the testimony of Glenn. That was the defendant's statement to an officer at the scene that he stabbed Thomas at the top of the stairs when he was trying to break in. The defendant did not deny this statement. The forensic evidence of glass from the upstairs door on the defendant's trousers corroborates the testimony of Glenn. It points to the defendant's own knowledge of his guilt and attempt to establish a false basis for a defense. The

defendant's superior size, his military training in hand-to-hand combat with knives and the location and severity of the ten stab wounds speak loudly that he did not reasonably believe it was necessary to use such deadly force in self-defense. In short, the evidence of the defendant's guilt was strong within the doctrine of *Degraffenreid.* Had the action of the trial court been error, "[e]ven observing the caution noted in *Degraffenreid,* with reference to cumulative evidence, the admission of the statement was both cumulative and harmless." *State v. Haggard,* 619 S.W.2d 44, 48 (Mo. banc 1981). Also see *State v. Zagorski,* 632 S.W.2d 475 (Mo. banc 1982); *State v. Fletcher,* 619 S.W.2d 57 (Mo. banc 1981).

The defendant also contends the trial court committed reversible error in overruling his objection to a part of the state's rebuttal argument. The court gave an instruction of justification in defense of self (§ 563.031) and the defense of premises (§ 563.036). The instruction was drawn from MAI–CR2d 2.41.1 and 2.42. In his closing argument the defendant relied upon and emphasized the defense of justification.

In rebuttal the following argument and objection were made:

"[Prosecuting Attorney]: Now let's talk about the duty to retreat. The duty to retreat is part of the law in Missouri, and part of all this is the issue of reasonable force, in light of all the circumstances, and the mere fact he was justified in the use of some force does not necessarily follow those same facts allowing the use of deadly force, and take that into consideration in determining whether he was justified in stabbing this man as many times as he did. Was he justified in stabbing this man as he was running away from him in the back? Distinguish between the issue of force—

[Defense Counsel]: I'll object to the State instructing the jury on law that is not in the instructions. It is not the law that's before them. I ask the jury be instructed to disregard the lecture on the law in Missouri."

"In general, under Missouri law, it is not the prerogative of counsel to inform the jury as to the substantive law of the case, . . . or to read the statutes to the jury. . . . It is improper for counsel to argue questions of law not within the issues, or inconsistent with the instructions of the court, . . . or to present false issues." *State v. Holzwarth,* 520 S.W.2d 17, 22 (Mo. banc 1975). The rule has been frequently summarized: "[I]t is not the prerogative of counsel to inform the jury as to the law." *State v. Simmons,* 602 S.W.2d 13, 15 (Mo. App.1980). However, the general rule does not forbid all mention of the law in argument. While it is improper for counsel to define the law, *State v. Shelby,* 634 S.W.2d 481 (Mo.1982), it is not error for counsel to discuss the law without defining it. *State v. Babbitt,* 639 S.W.2d 196 (Mo.App.1982); *State v. Broomfield,* 637 S.W.2d 711 (Mo. App.1981). Certainly counsel may argue the facts as they pertain to the law declared in the instructions of the court. *State v. Geer,* 624 S.W.2d 143 (Mo.App.1981); *State v. Wilbon,* 561 S.W.2d 133 (Mo.App.1978).

While the statement and application of the doctrine has varied according to the facts, before The Criminal Code it had been consistently held by the courts of Missouri there was a duty to retreat before using deadly force. "To support the plea of justification, there must be evidence that (1) the defendant was not the aggressor and did not provoke the use of force against himself, (2) there was a real or apparently real necessity to kill to save himself from an immediate danger of serious bodily harm or death, (3) the defendant had reasonable cause for such belief, and (4) the defendant did all within his power consistent with personal safety to avoid the danger and the necessity to take life, even to the point of retreat." *State v. Grier,* 609 S.W.2d 201, 203 (Mo.App.1980). "Self-defense is a last resort and in order to justify a homicide on such grounds the doer of the homicidal act must have done everything in his power, consistent with his own safety, to avoid the danger and avert the necessity, and he must retreat, if retreat be practicable." *State v. Sherrill,* 496 S.W.2d 321, 325–326 (Mo.App.

1973). "[T]he defendant's argument that she was under no duty to retreat under Missouri law simply is not consistent with the decided cases." *State v. Gardner,* 606 S.W.2d 236, 240 (Mo.App.1980). Also see *State v. Peoples,* 621 S.W.2d 324 (Mo.App. 1981); *State v. Ivicsics,* 604 S.W.2d 773 (Mo. App.1980).

■ The status of the duty to retreat as a positive rule of law has not been expressly definitively declared since the effective date of The Criminal Code. See Comment to § 8.050, The Proposed Criminal Code for the State of Missouri. It is not necessary to do so in considering the defendant's point. The instruction given by the court predicated the defendant's right to use deadly force upon his reasonable belief that it was necessary for him to do so. It is clear the state could argue on that issue the number and location of the stab wounds as well as the defendant's admitted advance into the front yard as contrasted with his opportunity to seek aid or return to the apartment. Compare *State v. McGowan,* 621 S.W.2d 557 (Mo.App.1981). The prosecuting attorney did state such a duty is a part of the law of Missouri. "Although we condemn the practice and admonish all prosecutors and defense counsel not to inform the jury what the law is or what counsel believes the law to be, we find nothing in the remarks which might have injured defendant's cause or prejudiced his case." *State v. Ball,* 622 S.W.2d 285, 288 (Mo.App.1981). In the context of the prosecuting attorney's argument, it is apparent he was referring to the improbability of the defendant's reasonable belief it was necessary to use deadly force to protect himself, as declared in the instruction referred to above. *State v. Foster,* 608 S.W.2d 476 (Mo.App.1980); *State v. Payne,* 600 S.W.2d 94 (Mo.App.1980). The argument did not contain a misstatement of the law such as that condemned in *State v. Jones,* 615 S.W.2d 416 (Mo.1981). Nor did it conflict with the instruction. *State v. Reynolds,* 517 S.W.2d 182 (Mo.App.1974). It did not inject a false issue into the case as did the argument condemned in *State v. Holzwarth,* supra.

■ Further, "[b]ut assuming that the comment was improper, it is not every such remark that will constitute ground for reversal.... We are persuaded by the precept that the trial court has substantial discretion in monitoring closing argument and determining whether comments are erroneously prejudicial." *State v. Williams,* 588 S.W.2d 70, 74 (Mo.App.1979). Also see *State v. Payne,* supra. As stated by this court, the rulings of the trial court in this regard "are reversible only for abuse of discretion where argument is plainly unwarranted." *State v. Moore,* 620 S.W.2d 370, 373 (Mo. banc 1981). Also see *State v. Wood,* 596 S.W.2d 394 (Mo. banc 1980). The ruling of the trial court does not require reversal. *State v. Gilbert,* 636 S.W.2d 940 (Mo. banc 1982); *State v. Reynolds,* supra. Moreover, it should be noted the objection to the now complained of portion of the argument was not timely made. The point defendant now makes may properly be considered only as plain error. *State v. Crawford,* 619 S.W.2d 735 (Mo.1981). The action of the trial court certainly does not constitute plain error. *State v. Giannico,* 642 S.W.2d 651 (Mo. banc, 1982); *State v. Newlon,* 627 S.W.2d 606 (Mo. banc 1982); *State v. Strubberg,* 616 S.W.2d 809 (Mo. banc 1981).

The defendant's third point is that the trial court erred in not granting his motion for a continuance from 3:28 p.m. on the second day of trial until the morning of the third day. Apparently Haynes had been subpoenaed but told he need not appear until the morning of the third day. It is readily surmised the motion was made when the state rested sooner than anticipated. The motion was premised upon the proposition that if granted, Haynes would testify Thomas had threatened the defendant and that Don Scott was lying about the events leading up to the stabbing. In presenting the motion to the trial court and in arguing this point to this Court, the defendant insists it is valid because he was entitled to hear all the testimony before he decided to testify.

The rule of law by which the action of the trial court is to be judged is well established. "A request for a [recess or continuance during trial] is addressed to the sound discretion of the trial court and a very strong showing is required to induce a higher court to interfere. The action of the trial court will only be disturbed where that strong showing demonstrates a clear abuse of discretion." (Citations omitted). *State v. Bey,* 599 S.W.2d 243, 247 (Mo.App.1980). This court has been cited to no authority to support the defendant's argument referred to above. He cannot be heard to say he was entitled to hear the testimony of Haynes in order that he might tailor his testimony to correspond therewith. Without intimating the defendant's position would otherwise be valid, it cannot be demonstrated that the denial of the motion forced the defendant to testify when he would not have otherwise done so. By the state's evidence and the admissions of the defendant to the officers at the scene, it was clearly established the defendant killed Thomas by stabbing him ten times. By the facts and by his opening statement the defendant was committed to the defense of justification. While the purported testimony of Haynes would support that defense, only the testimony of the defendant would inject that issue. There are no circumstances indicating the trial court abused its discretion in refusing the continuance and this point is denied.

The defendant by a pro se amendment to his motion for a new trial and by his brief in this Court seeks a new trial because of ineffective assistance of counsel. This contention is based upon trial counsel's (counsel on appeal did not represent the defendant in the trial of the case) failure to call Haynes as a witness. Only when the record fully develops such an issue may it be considered on direct appeal rather than upon a motion under Rule 27.26. *State v. Murphy,* 592 S.W.2d 727 (Mo. banc 1979). The background for this contention is stated under the preceding point. The record also shows that upon the morning of the third day of trial defendant's trial counsel announced that Haynes had been located but a "tactical decision" had been made not to call him. This certainly does not demonstrate ineffective assistance of counsel. *State v. Turner,* 623 S.W.2d 4 (Mo. banc 1981). It cannot be assumed that tactical decision was made in error. It may have been learned that Haynes would not testify as anticipated or would have additional knowledge detrimental to the defendant. In any event, the record does not establish ineffective assistance of counsel. The judgment is affirmed.

RENDLEN, C.J., WELLIVER, HIGGINS, DONNELLY, JJ., and SEILER, Senior Judge, concur.

BILLINGS and GUNN, JJ., not sitting.

BLACKMAR, J., not participating because not a member of the Court when cause was submitted.