**STATE of Missouri, Plaintiff-Respondent,**

v.

**Eddie FLEMING, Defendant-Appellant.**

**No. 36182.**

Missouri Court of Appeals,
St. Louis District,
Division Three.

May 20, 1975.

Charles D. Kitchin, Public Defender, G. Jeffrey Lockett, and James C. Jones, Asst. Public Defenders, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., and K. Preston Dean, II, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., and Thomas J. Kavanaugh, Asst. Circuit Atty., Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for plaintiff-respondent.

SIMEONE, Presiding Judge.

This is an appeal by the defendant-appellant, Eddie Fleming, who was charged, tried, found guilty by a jury and sentenced by the court to five years in the Department of Corrections for the offense of operating a motor vehicle without the consent of the owner. § 560.175, RSMo 1969, V.A.M.S. Sentence was imposed by the circuit court of the City of St. Louis on April 19, 1974. The defendant duly appealed. For reasons hereinafter stated, we affirm the judgment.

Since the appellant does not question the sufficiency of the evidence, we will review only the salient facts dispositive of the points raised on this appeal.

On July 29, 1973, at approximately 6:30 p. m., James E. Grice, the owner of a 1965 Chevrolet, parked his automobile in front of 1417 Bissell Street in the City of St. Louis. About an hour later he noticed his automobile was missing and reported the incident to the police. He had not given the defendant permission to take or use the car.

The next evening, July 30, 1973, at about 9:45 p. m., Officer Charles Kiefer of the St. Louis Police Department was in his police vehicle traveling east on Lindell Boulevard when he observed a 1965 Chevrolet violate a traffic signal and make a right-hand turn at Vandeventer Avenue. The officer turned on his red lights and his siren and attempted to catch the vehicle. The Chevrolet turned into an alley and went west about two blocks and a half; the officer pursued the vehicle with his red lights on and siren sounding. At about the 4100 block, the Chevrolet stopped, one person got out of the vehicle, who was identified as the defendant, ran south across a parking lot

towards West Pine Street, and around the front of a house next to the parking lot and down into a gangway. The officer pursued the person and caught him "right at the mouth of the steps in the basement area." Officer Kiefer never "lost sight of this subject once. I was behind him at all times." When the officer apprehended the person, he was placed under arrest for violating a traffic signal. When apprehended, the defendant had on a flowered print shirt and was breathing heavily. After apprehension, the officer and the person returned to the police vehicle and "called for a check to determine if the car was wanted for anything . . . ." The information was that the vehicle had been reported stolen the previous day. The appellant was taken to the district station. The officer telephoned Mr. Grice, who later picked up his vehicle at the towing garage.

On cross-examination, defense counsel brought out that there were other persons in the "gangway," a man, woman and two children, and attempted to show on cross-examination that the person who alighted from the vehicle was not the same person apprehended by Officer Kiefer.

After the close of the state's case, the following occurred:

"MR. LOCKETT [defense counsel]: Your Honor, . . . ladies and gentlemen of the jury, this is a part of this trial of wherein the defendant has an opportunity to set forth to you its [sic] *theory* of the case. [Emphasis added].

THE COURT: No, your evidence, what evidence you expect to produce, Mr. Lockett. Argument is for later on, after both sides have rested their cases. Proceed.

MR. LOCKETT: Your Honor, defendant would request the Court's leave to pronounce his theory of the case, seeing as how the State has pronounced its theory.

THE COURT: This is that time where you will tell the jury what your evidence is expected to be. Proceed.

MR. LOCKETT: Your Honor, may I take that position that request is overruled? . . .

THE COURT: Yes, they [sic] are. We understand the word theory to be argument, Mr. Lockett, in the sense that you are using it. It's a word we understand as argument. This is the time when you set forth your evidence.

MR. LOCKETT: Your Honor, it is the defendant's understanding that the State was allowed in its opening statement to go beyond precisely what the evidence was and to state a theory of the case.

THE COURT: Would you proceed with your statement, if you have one, Mr. Lockett, please. . . .

MR. LOCKETT: Yes, your Honor.

Ladies and gentlemen, in light of this, I need to explain to you that the defendant has no evidence to present in this case; this is not to say the defendant does not have an interpretation of the facts that have been presented here.

· · · · ·

MR. LOCKETT: I wish to address the jury and explain the situation and how it stands with the jury.

THE COURT: If you have any new matters to cover, Mr. Lockett, in—where the Court's instructed you, you may proceed.

MR. LOCKETT: The defendant has no evidence to introduce at this time, your Honor.

THE COURT: Very well. Does that complete the opening statement of counsel?

Very well. Thank you very much."

The defendant presented no evidence in his behalf. The court gave several instruc-

tions, including one on "flight."[1] The jury found the defendant guilty, and after motion for new trial was overruled and allocution was granted, defendant was sentenced to five years in the Department of Corrections.

On this appeal, appellant contends that the trial court erred (1) in denying defense counsel's request to state the "defendant's theory of the case in his opening statement" because such refusal contravened Rule 26.02(4), V.A.M.R., gave the jury the impression that the defendant had to present evidence of his own in order to answer the charge and unfairly prejudiced the defendant's cause, and (2) in giving the flight instruction over objection, because (a) evidence of flight is circumstantial evidence and is properly instructed upon by MAI–CR 3.42, and (b) Rule 20.02 prohibits the use of an instruction not in MAI–CR when an MAI–CR instruction adequately covers the subject and (3) the instruction gave undue prominence to this aspect of the case and thus was highly prejudicial.

The appellant's first point is novel. He argues that in his opening statement, which he reserved, he attempted to state his "theory" of the case, by which he means an "interpretation based solely upon the facts presented by the State." But the trial court "limited his opening statement to an announcement that he had no evidence to introduce." In so ruling, the court stated that it understood the word "theory" to mean "argument." But appellant contends these are two separate concepts—"theory" simply connotes a "proposed explanation [of what?]," whereas "argument" suggests a "lengthy discussion or debate." Appellant contends that, although he had no evidence to introduce, he did "have an interpretation of the facts which contradicted the State's theory." So, defendant concludes that he "merely attempted to *outline* his defense, not *argue* it [emphasis his]," and the trial court failed to recognize this distinction. He also argues that Rule 26.02(4) authorizes an opening statement broader than an announcement that "no evidence will be presented."

Concerning his second point, appellant "frankly concedes" he is requesting this court to reverse the long-standing rule that a flight instruction may be given when warranted by the evidence. State v. Zerban, 412 S.W.2d 397, 402 (Mo.1967); State v. Bryant, 361 Mo. 318, 234 S.W.2d 584, 586 (1950). He requests this because (1) a circumstantial evidence instruction adequately covers the matter, (2) the flight instruction singles out evidence unfavorable to the defendant and thereby affords it undue prominence, (3) the recent adoption of MAI–CR indicates the desire of the Supreme Court to standardize criminal instructions and (4) the flight instruction is a comment on the evidence.

We rule both points against appellant and hold the trial court did not err on either point raised.

The principles relating to opening statements are well recognized and known. The "opening statement" of counsel is an outline of the anticipated proof, a forecast or preview of what counsel expects the testimony to show. Its primary purpose is to inform the court and the jury in a general way of the nature of the case, the outline of the anticipated proof and the significance of the evidence as it is presented; the purpose is not to test the sufficiency or the competency of the evidence. Hays v. Mis-

1. Instruction No. 6: " 'The Court instructs the jury that if you find and believe from the evidence that the defendant immediately or shortly after the incident described in the evidence fled for the purpose of avoiding arrest by the officers of the law and trial of an offense, if you find an offense was committed at the time in question, then such flight, if you find he did so flee, is a circumstance which may be taken into consideration by you in connection with all the other facts and circumstances in the case, in determining his guilt or innocence of the charge brought against him.' . . ."

souri Pacific Railroad Company, 304 S.W.2d 800, 804 (Mo.1957); State v. Fenix, 311 S.W.2d 61, 65 (Mo.App.1958); Zabol v. Lasky, 498 S.W.2d 550, 553 (Mo.1973).

And as a general rule, the opening statement " 'should be brief and general, rather than detailed, and should be confined to statements based on facts which can be proved and should not include facts which are plainly inadmissible.' " State v. Feger, 340 S.W.2d 716, 724 (Mo.1960).

The office of the opening statement and the principles relating thereto are applicable to both the prosecutor and counsel for the defense. Rule 26.02(4) provides that "[i]f the defendant's counsel shall have reserved his opening statement until the close of the state's case-in-chief, he may then state his defense . . . ." This Rule gives the defendant's counsel the same right and latitude as the prosecuting attorney under the principles relating to an "opening statement."

The trial court did not err in limiting defendant to the evidence defendant expected to produce. Appellant makes too fine a distinction between "theory" and "argument." Counsel for defendant wanted to present his "theory," that is, an "interpretation of the facts that have been presented here." But counsel's distinction between theory—simply a proposed explanation—and argument—a lengthy discussion or debate—is too fine a distinction to draw. The distinction is one without a difference.

The only purpose of the opening statement by either counsel is to "inform the jury what the case is about and to outline the proof that will be used—on the one hand to establish the commission of the crime and on the other to outline the defense—so that the jurors may more intelligently follow the testimony as it is related by the witnesses." Foster v. United States, 308 F.2d 751, 753 (8th Cir. 1962).

The Standards Relating to the Prosecution and Defense Function of the American Bar Association Project on Standards for Criminal Justice provide as to the defense function that "[i]n his opening statement a lawyer should confine his remarks to a brief statement of the issues in the case and evidence he intends to offer . . . ." Standard 7.4. The Commentary to the Standard states that "[t]he purpose of the opening statement is narrow and limited to a brief outline of the issues and the matters which counsel believes he can support with competent and admissible evidence . . . ." Standards, supra, at 267.

Furthermore, in this case the witnesses for the state were cross-examined by defense counsel which brought out his theory of defense—that the defendant who was apprehended was not the one operating the vehicle. Officer Kiefer was extensively cross-examined. State v. Foster, supra, 308 F.2d at 753.

Under all the circumstances, therefore, we hold the trial court did not err in denying counsel to state his "theory" of the case.

Next, appellant urges us to reverse the long-standing rule that a flight instruction may be given whenever warranted by the evidence.[2] This we cannot do. Our Supreme Court has long held that a "flight" instruction is proper and is not a comment on the evidence. State v. Jordan, 306 Mo. 3, 268 S.W. 64, 70 (banc 1924); State v. Meininger, 306 Mo. 675, 268 S.W. 71, 77 (1925); State v. Bryant, supra, 234 S.W.2d at 586 (1950); State v. Coleman, 441 S.W.2d 46, 52–53 (Mo.1969). See State v. Hudson, 491 S.W.2d 1 (Mo.App.1973).

No circumstantial evidence instruction was requested or given and none was required, since the evidence was not entirely circumstantial. State v. Little, 501

---

**2.** Appellant impliedly concedes that the evidence warranted the giving of the flight instruction.

S.W.2d 562, 563 (Mo.App.1973); Notes on Use to MAI–CR 3.42 (circumstantial evidence).

Although the Supreme Court on January 13, 1975, directed that after March 1, 1975, no "so-called flight or counter-flight instruction may be given," MAI–CR 5.40, this explanatory note on flight is not retroactive. In approving and adopting some instructions in MAI–CR, we do not believe the Supreme Court intended to abolish others until specifically so provided. Rule 20.01 provides: "Approval of pattern instructions to juries . . . will be made from time to time by order of this Court." The MAI–CR is necessarily incomplete and, until new and approved instructions are adopted by our Supreme Court, other instructions not contained therein still obtain. The Comments to the MAI–CR reinforce our belief that flight instructions were not to be barred retroactively. The comments of the drafting committee state:

". . . Some of these [instructions] *will be* gathered together in the 5.00 Series, there to be quarantined and barred from *further* use [emphasis added]." MAI–CR Comments, Foreword at 13.

At the time of trial, the instruction was a proper one. We decline to reverse the Supreme Court's long-standing rule that a flight instruction may be given whenever warranted by the evidence as to those cases which were tried before March 1, 1975.

We have read the entire record, the briefs and authorities cited by the parties. We find no prejudicial error and hence affirm the judgment of conviction.

The judgment is affirmed.

McMILLIAN and GUNN, JJ., concur.