**STATE of Missouri, Respondent,**

v.

**Daniel LANKFORD, Appellant.**

**No. KCD 29122.**

Missouri Court of Appeals,
Kansas City District.

April 3, 1978.

Motion for Rehearing and/or Transfer
Denied May 1, 1978.

Application to Transfer Denied
June 15, 1978.

William F. Bauer, Asst. Public Defender, St. Joseph, for appellant.

John D. Ashcroft, Atty. Gen., Daniel F. Lyman, Asst. Atty. Gen., Jefferson City, for respondent.

Before SOMERVILLE, P. J., and DIXON and TURNAGE, JJ.

TURNAGE, Judge.

Daniel Lankford was convicted on two counts of assault with malice aforethought in an attempt to commit the offense of robbery in the first degree. Section 559.-180, RSMo 1969. The jury assessed punishment at ten years confinement on each count with the sentences to run concurrently. A companion case is *State v. Tolliver*, 562 S.W.2d 714 (Mo.App., decided January 26, 1978).

On this appeal Lankford contends the court erred in (1) refusing to allow counsel to refer to a State witness's juvenile record; (2) failing to accept his plea of guilty to a lesser charge; and (3) failure to allow counsel to argue an unfavorable inference on the failure of the State to produce police officers who took a statement from Lankford. Affirmed.

No question is raised concerning the sufficiency of the evidence. The jury could reasonably have found that Lankford procured Terry Tolliver and Kenneth Thornton to rob the owners of Nick's Market in St. Joseph. Thornton was a juvenile.

Lankford drove Tolliver and Thornton past Nick's Market and pointed out it was a place with a lot of money and easy to rob because the owners were old. Lankford gave the two boys gloves, women's stockings and overalls to use in the robbery. Tolliver obtained a loaded pistol from Lankford's house.

Lankford drove the two boys to an alley near the market and let them out after telling them he would meet them there after the robbery. The boys went to the market but discovered it was closed. The boys then decided to wait for the owners of the market to emerge. When they did, the boys accosted them as they were getting into their car. In the scuffle both the owner and his wife were shot. The boys did not

obtain any money. The boys found Lankford in a nearby bar and told him of the unsuccessful attempt to rob the market owners.

Lankford's counsel advised the court prior to his opening statement that he wanted to refer to the fact Thornton was at the time on probation from juvenile court and stood charged with the same crime as Lankford in the juvenile court as a result of the robbery attempt. Lankford argues it was important and necessary for him to advise the jury in his opening statement as to the juvenile record of Thornton.

■ After the court denied the request to refer to this record in the opening statement, evidence of Thornton's juvenile record was brought out on both direct and cross-examination. Lankford's counsel also made reference to his record and its effect on Thornton's credibility as a witness in his closing argument. The principles relating to opening statements are fully explained in *State v. Fleming,* 523 S.W.2d 849, 852[1] (Mo.App.1975). Among other purposes, *Fleming* states the opening statement is designed to provide the jury with an outline of the anticipated proof and its significance. The court stated the purpose "is not to test the sufficiency or the competency of the evidence." *Fleming, supra.*

■ Here Lankford's counsel did not seek to outline anticipated proof or its significance by his reference to Thornton's juvenile record but merely sought to comment on the credibility of Thornton as a witness. This was not a proper function of the opening statement. Counsel obtained full benefit of the doubt cast on Thornton's credibility by his juvenile record when this was brought out in evidence and referred to in the final argument. There was no error in refusing to allow reference to Thornton's juvenile record in the opening statement.

Lankford complains of the refusal of the court to accept his plea of guilty to conspiracy to commit the offense of robbery. Section 556.120, RSMo 1975 Supp. After the jury had been selected but prior to the introduction of any evidence, the prosecuting attorney and Lankford's counsel advised the court agreement had been reached by which Lankford would plead guilty to a conspiracy charge. The court advised Lankford he had the option of whether or not to accept the plea of guilty and conducted an examination of Lankford to form the basis of a ruling.

When the court inquired if Lankford were involved in aiding and assisting Thornton and Tolliver in the attempted armed robbery, Lankford stated he knew nothing about any robbery. He denied any knowledge of the intent of the two boys to commit any crime when he let them out of the car.

■ In the face of Lankford's denial of a robbery attempt, the court refused to accept the plea of guilty and the trial proceeded. Lankford now contends he was deprived of due process of law by the failure to accept his guilty plea. It is well settled there is no constitutional right to have a guilty plea accepted. *Steward v. State,* 499 S.W.2d 830, 832[1–3] (Mo.App. 1973); *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). In addition, this court has recently reiterated this rule in *State v. Meaney,* 563 S.W.2d 117 (1978).

■ In the face of Lankford's denial of any knowledge of any crime about to be committed, the court was fully justified in refusing the plea of guilty. Rule 25.04.

■ Lankford finally contends the court erred in refusing to allow counsel in his final argument to comment on the failure of the State to produce police officers to testify concerning a statement made by Lankford. Counsel sought to show an unfavorable inference against the State by the failure to produce witnesses which were more available to it.

During the cross-examination of Lankford, the prosecutor inquired if Lankford had made a statement to the police. Lankford replied he had. The prosecutor then inquired if Lankford had made certain incriminating statements and Lankford denied these statements had been made. No

rebuttal evidence was offered to show any incriminating statements had been made by Lankford and the subject rested with the jury with only Lankford's denial.

Counsel sought to argue to the jury that if Lankford had made any incriminating statements the State would have produced the police officers who took the statement and since such police officers were not produced and since they were more available to the State the jury should draw the inference that no incriminating statement had been made. The above argument overlooks the obvious fact that no evidence of an incriminating statement was before the jury. The jury had only the denial of Lankford that the incriminating statements had been made.

The same argument was made in *State v. Holmes*, 389 S.W.2d 30, 34[4] (Mo.1965) concerning fingerprints. There a defendant sought to draw an unfavorable inference in final argument from the fact the State failed to take fingerprints from the articles stolen and failed to introduce such fingerprints in evidence. The court held the State was not required to take fingerprints nor to produce such fingerprints in evidence. The court further held the State was not required to account for the absence of such fingerprints. The court concluded the argument was intended to divert the attention of the jury from the real issues.

The reasoning in *Holmes* applies in this case. The State was not required to take a statement from Lankford nor was it required to produce any statement in evidence. It follows, of course, the State was likewise not required to account for the absence in evidence of any statement. As in *Holmes* this argument could only have been intended to divert the jury's attention from the main issues. The judgment is affirmed.

All concur.