STATE of Missouri,
Plaintiff-Respondent,

v.

Arthur BROOMFIELD,
Defendant-Appellant.

No. 43129.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 29, 1981.

MacArthur Moten, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

GUNN, Judge.

Defendant appeals his convictions for first degree burglary and assault in the first degree. He alleges the following trial court errors: (1) in overruling his motion for judgment of acquittal based on insufficiency of the evidence; (2) in allegedly taking judicial notice of the amount of narcotic required to place the prosecuting witness under its influence; (3) in giving instructions on first and second degree burglary; (4) in failing to declare a mistrial on the

prosecutor's reference to the requirement of "reasonable doubt" in closing argument. We affirm.

The prosecutrix was an admitted drug user—"T's" and "blues" seeming to be her weakness. Defendant and the prosecutrix, after a casual meeting, spent an evening together primarily at a friend's home and at a north St. Louis tavern. Upon reaching her home, the prosecutrix rejected defendant's advances toward her and went inside to make use of toilet facilities. Upon emerging from the bathroom, the prosecutrix saw the defendant standing in the living room "with his hand up over the top" of a lighted lamp. His entry into the living quarters apparently had been accomplished by reaching through a broken window and unlatching the door. After being told by defendant that "what he had to do wouldn't take but five minutes," the prosecutrix attempted to run from him, but he produced a knife and stabbed her in the neck and hand inflicting serious wounds.

During the course of the evening the prosecutrix had absorbed narcotics in the form of one "T" pill and one "blue" pill.[1] She had also drunk some alcoholic beverages and smoked some marijuana, although the record is not really clear on this latter matter. Defendant's counsel delved into the prosecutrix' drug usage in substantial detail. However, she insisted that at most she only became "slightly high" during the evening and her use of drugs did not hamper her in her identification of defendant as her assailant; that she could see him quite plainly in the light of her living room and knew him from spending the evening hours with him. In any event, the jury had the narcotics and identification issues placed completely before them.

Defendant's first point of appeal concerns the sufficiency of the evidence to support

the conviction. In reviewing the evidence, we follow the basic precept that we accept all reasonable inferences supportive of the verdict and disregard those contrary to the finding of guilt. *State v. Turner*, 623 S.W. 4 (Mo. banc 1981); *State v. Strickland*, 609 S.W.2d 392, 395 (Mo. banc 1980).

Defendant argues that the prosecutrix was a drug user, her testimony contained certain inconsistencies and there was such poor lighting in the room that her capacity to see for identification purposes was limited. Hence, he concludes, a reasonable doubt existed as to defendant's guilt, and his motion for judgment of acquittal should be granted. But the prosecutrix insisted that her drug use did not interfere with her recall of the events of the attack upon her nor did the lighting prevent her from positively identifying defendant as her assailant.

The prosecutrix' use of narcotics does not disqualify her testimony. It is only a factor to be considered by the jury in determining what weight to place upon her testimony and her credibility. So, too, is it a matter for the jury to resolve inconsistencies in her testimony. *State v. Booth*, 423 S.W.2d 820 (Mo. 1968); *State v. Rogers*, 583 S.W.2d 293, 295 (Mo. App. 1979); *State v. Jarmon*, 556 S.W.2d 469, 471 (Mo. App. 1977); *State v. Dodson*, 556 S.W.2d 938, 949 (Mo. App. 1977). In this case there was substantial evidence from which the jury could find defendant positively identified as the burglar and assailant and guilty of the crime for which he was charged and convicted.

Defendant next complains that the trial court improperly took judicial notice of the number of particular narcotics required to cause the prosecutrix to obtain a "high" condition.[2] Defendant's complaint is based on the following colloquy primarily between the trial court and the prosecutrix:

1. "T's" were described as talwin, and the blue pills were simply called "blues."

2. This point, in fact, has not been preserved for appeal, as no objection was made to the particular interrogation by the court of the prosecutrix. *State v. Graves*, 588 S.W.2d 495, 499 (Mo. banc 1979); *State v. Ashley*, 616 S.W.2d 556, 561 (Mo. App. 1981); *State v. Darris*, 587 S.W.2d 89, 91 (Mo. App. 1979).

Q  [Defendant's counsel] How many tablets had you had?

A  [Prosecutrix] Two.

Q  Two tablets?

A  Uh huh.

Q  Okay. These tablets are they all—I mean, I am curious. Are they all the same strength?

A  Yes. Well, there are two different types of tablets. One is what they call a talwin and the other one is, one is a pink pill and one is a blue pill.

Q  So how many do you usually take to get high? How many does it take, does it always take two?

A  It doesn't take no certain quantity to get me high.

Q  You could get high off of one, isn't that true?

A  Yes, two sometimes, yeah.

Q  I see.

A  Not really high but I can feel it.

THE COURT: Let's get the record straighten. [sic] That type of drug it takes two, it takes a blue and a red to get it together?

WITNESS: Right.

THE COURT: So you can't make it on no one pill?

WITNESS: In other words, you don't take one without the other this is the way they do it, but some people do like, you know, like in other words, I'll say maybe four pinks, four blues. You see?

THE COURT: Sometimes they mix three. Two blues, two pinks and one blue?

WITNESS: Right, this is right, yes, sir.

THE COURT: Okay, now we have the record straighten [sic] out. You may go ahead.

Q  (By Mr. Moten): Very well. On this evening you had two?

A  That's right.

Q  I see. You had a pink and a blue?

A  Right.

Q  I see, and it does take a pink and a blue to get high?

A  Sometimes. It all depends on the individual, you know, you know medication, you know, it all depends on the individual.

Continued cross-examination brought forth that the prosecutrix was not particularly "high" or "feeling good" as a result of her use of the narcotics that evening.

■ We cannot find that the trial court's examination amounted to a judicial notice of the quantity of "T's" and "blues" required for a "high." [3] The interrogation was no more than a clarification of the record—not improper under the circumstances. *State v. Warren,* 579 S.W.2d 723, 728 (Mo. App. 1979). There was no abuse of the trial court's discretion in the interrogation as conducted and no display of partiality. *State v. Cain,* 485 S.W.2d 60, 62 (Mo. 1972); *State v. Roddy,* 604 S.W.2d 32, 33 (Mo. App. 1980).

■ Defendant also complains that it was error to give instructions on burglary first and second degree, as all the evidence supported only first degree burglary, the crime for which he was convicted. While not determining whether there was error in submitting the lesser included offense of burglary second degree, we find that, at most, any error would be harmless, as there was sufficient evidence to convict defendant of the greater offense. *State v. Jackson,* 594 S.W.2d 623, 625 (Mo. banc 1980); *State v. Oliver,* 572 S.W.2d 440, 446 (Mo. banc 1978). Furthermore, any error in this instance in allowing the jury to deliberate on the lesser offense would be to defendant's advantage, and he may not complain. *See State v. Heitman,* 589 S.W.2d 249, 255–56 (Mo. banc 1979), *cert. denied,* 446 U.S. 941, 100 S.Ct. 2164, 64 L.Ed.2d 795 (1980); *State v. Roland,* 619 S.W.2d 771, 777 (Mo.

---

3. This is so even though the trial court in a post-trial conversation made reference to his knowledge of the effects of "T's" and "blues" on a user.

App. 1981) (defendant may not complain of error in his favor).

■ Finally, defendant takes issue with the following statement regarding "reasonable doubt" made by the prosecutor in closing argument:

He talks about there's got to be a doubt in your minds. Folks, there is no doubt. There can be no doubt in your minds. Even if there were a doubt it has to be a reasonable doubt. You have got to find him guilty beyond a reasonable doubt. If you got an unreasonable doubt in your minds you still have to find him guilty, that's the law. That's the law and the constitution. That's been the law for two hundred years.

The trial court sustained the objection and directed the jury to disregard the remark. No further relief was requested; hence, the point has not been preserved for review, and we find no plain error in the trial's court's refusal to impose mistrial after granting all the relief sought. *Ensor v. Hodgeson,* 615 S.W.2d 519, 526 (Mo. App. 1981); *State v. Mabry,* 602 S.W.2d 1, 2 (Mo. App. 1980); *State v. Sanders,* 577 S.W.2d 186, 187 (Mo. App. 1979); *State v. Porter,* 538 S.W.2d 888, 890 (Mo. App. 1976). While it is improper for counsel to instruct the jury as to the definition of reasonable doubt [*State v. Jones,* 615 S.W.2d 416, 418–20 (Mo. 1981); *State v. Belleville,* 530 S.W.2d 392, 395 (Mo. App. 1975)], the statement of the prosecutor in this instance was definitely not a definition of "reasonable doubt." It was, at most, a discussion without a definition and not impermissible. *State v. Ball,* 622 S.W.2d 285, 288 (Mo. App. 1981). There was, therefore, no abuse of discretion in the trial court's refusal *sua sponte* to declare a mistrial. *State v. Gay,* 629 S.W.2d 470 (Mo. App. E.D. 1981). Certainly, the comment did not result in a denial of defendant's rights for a fair trial. *State v. Sanders,* 539 S.W.2d 458, 464 (Mo. App. 1976).

Judgment affirmed.

DOWD, P.J., and SIMON, JJ., concur.

