STATE of Missouri, Respondent,

v.

Bruce E. HARRIS, Appellant.

No. WD 37909.

Missouri Court of Appeals, Western District.

March 31, 1987.

Sean D. O'Brien, Public Defender, S. Dean Price, Asst. Public Defender (argued), Kansas City, for appellant.

William L. Webster, Atty. Gen., Elizabeth A. Levin, Asst. Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen. (argued), Kansas City, for respondent.

Before CLARK, C.J., and TURNAGE and NUGENT, JJ.

NUGENT, Judge.

Defendant Bruce E. Harris appeals his convictions by a jury of first degree robbery, § 569.020, and armed criminal action, § 571.015[1], for which he was sentenced to concurrent terms of imprisonment of fifteen years and five years, respectively.

Defendant first claims that the trial court erred by prohibiting him from outlining in his opening statement favorable evidence that he expected the state to produce. Defendant also claims that the trial court erred in giving MAI–CR2d 1.02 and MAI–CR2d 2.20 in that those instructions improperly define "reasonable doubt" as proof that leaves the jury "firmly convinced" of a defendant's guilt, thereby reducing the state's burden below that required by the due process clauses of the state and federal constitutions. Finally, defendant requests reversal because, during his closing argument, the prosecuting attorney impermissibly defined "reasonable doubt", shifting to the defendant the burden of creating a reasonable doubt.

For the reasons set forth below, we affirm the judgment.

The relevant facts center upon the question of misidentification of the defendant as perpetrator of the crimes. On July 15, 1985, John Knoche was cleaning his car near his apartment building when a young black male approached him from behind and pushed a gun against his head. The man ordered him to get in the car and to begin driving normally or he would blow him all over the side of the car. Mr. Knoche drove the man around the midtown area for over an hour. At some point the man ordered him to cash a check for $320 at the drive-in window of his neighborhood bank. The man then took the money.

Eventually, the assailant had Mr. Knoche stop the car in a park and ordered him to go into a ravine and remove his clothing. Then, he hit the victim on the back of the head with the gun and drove away in the car, taking his billfold, checkbook, credit cards, clothing, two gold rings, and approximately $345 in currency as well.

Mr. Knoche made his way to a nearby residential area where neighbors lent him a blanket to wrap himself and called the police. When Officer James Pruetting arrived, he noted the victim's description of

---

1. All sectional references are to Revised Statutes of Missouri, 1978, as amended.

the assailant as a young black male, five feet nine inches tall, 145 pounds, in his early twenties. Mr. Knoche described the assailant's clothing and his own automobile. He omitted any reference to the robber's facial hair.

About two and a half hours later, Mr. Knoche gave a more detailed description to Detective Clarence Luther at the police station. Again he said that the man was five feet nine inches tall and weighed 145 pounds. He also said that the robber had medium-length natural style hair and that he was clean-shaven.

On July 25, 1985, Mr. Knoche viewed a photo array at police headquarters and identified defendant Harris as the robber. That photograph of Mr. Harris showed a young black man with very short hair and light facial hair growth. On August 9, 1985, he positively identified the defendant in a live lineup. Defendant Harris is over six feet tall and then weighed from 175 to 180 pounds.

The police recovered Mr. Knoche's car and some of his belongings on July 19, 1985. Investigators found no fingerprints matching those of the defendant. Mr. Knoche's identification of the defendant Harris was the only evidence linking him to the crimes.

The record pertinent to defendant's first point on appeal shows that in her opening statement defense counsel made these remarks:

First of all, the evidence will be undisputed that Mr. Knoche was robbed on July 15th. However, the Defendant expects that his evidence and State's own evidence will show that Bruce Harris was not the man that robbed him on that date. Immediately after the robbery took place, police arrived on the scene and they took a very brief description of the robber to put over the radio to look for the man who had committed this robbery; and at that time Mr. Knoche, within just a few minutes of this robbery, described this robber as being five foot, nine inches tall. The Defendant's evidence and State's own evidence will be that Bruce Harris is six foot, just a little above that. Further, Mr. Knoche described this man weighing 145 pounds. Defendant's evidence will be that at that time Bruce Harris weight [sic] btween [sic] 175 and 180 pounds.

After Mr. Knoche was taken back and got his clothes, then, as Mr. Quinn told you, the evidence will be he went down to the police department and he gave a statement to Detective Luther. At that time he was asked, again, well what did this man look like? The evidence will be that his statement, once again, was that this man was five foot, nine inches tall. Once again, he told Detective Luther that this man weight [sic] about 145 pounds. The defense evidence will be that at that time, of course, Bruce Harris was over six feet and weighed between 175 and 180 pounds.

Further, at that time Mr. Knoche went to describe this man as having a medium length natural hair style. The Defendant's evidence will be that in late June of 1985 he went to the beauty shop at 71st and Prospect and attempted to get what's called a Jeri curl. It didn't take and it looked awful and within a week or so, about a week after July 4th, Mr. Harris' uncle, Jim Haislip, will come in and tell you that he cut Bruce Harris' hair and he shaved it. He shaved his head. Mr. Haislip will come in and tell you that he can't remember exactly when he did this, but he remembers the July 4th holiday and believes it was within a week or so after than [sic]; certainly well before July 15th. The State's own evidence, State's own photographs Mr. Quinn has mentioned will show that on July 18th when Mr. Harris—when Bruce Harris was arrested, he had just a very shading of hair. I don't want to mislead you. The defense evidence will not be Mr. Harris was shaved like Telly Savalas, but it was cut very, very short, and State's own photograph will show that. Additionally, Mr. Knoche and his statement to Detective Luther described this man as being clean shaven.

At that point, the prosecutor objected on the ground that defendant's opening statement constituted an improper comment on evidence that the defendant hoped to develop through cross-examination of the state's witnesses. The trial court sustained the objection, explaining that the opening statement entitled the defendant to outline the evidence from his perspective but did not permit him to comment on what he expected the state's evidence to be. Resuming her opening statement, defense counsel explained that she would show that on July 15 the defendant had a mustache and visible hair growth on his chin.

With regard to defendant's third point on appeal the record reveals that in the rebuttal stage of the state's summation the prosecuting attorney made the following argument about the jury instruction [2] on the state's burden of proof:

> Reasonable doubt, reasonable doubt. That's the only thing they have got left, ladies and gentlemen. What is that? The instruction tells you about that too. What it tells you, ladies and gentlemen, is that it's not beyond all doubt. It's just what it says, be reasonable. We bring people in here from the community, ladies and gentlemen, because you're allowed to use your common sense when you go back into that juryroom. You use that common sense to apply to the instructions of the law. That's reason. You compare. I'll trust you to compare the reasonableness of Mr. Knoche's identification versus this Defendant's story.

The defendant objected that the prosecutor's last statement impermissibly characterized the state's burden of proving guilt beyond a reasonable doubt as one of believing either the victim or the defendant. The

trial court sustained the objection and, on defendant's request, instructed the jury to disregard the last statement.

### I.

In his first point, defendant Harris contends that the only evidence of his guilt was the testimony of the victim, John Knoche, and that Mr. Knoche's description of his assailant was strikingly different from defendant's description. Defendant complains that the court's ruling denied him the right to make an effective opening statement, depriving him of "equal rights and opportunities under the law" as well as the right to "appear and defend ... by counsel" in violation of §§ 2 and 18(a), Art. I of the Missouri Constitution and the Sixth Amendment to the United States Constitution, requiring reversal.

■ The scope and manner of opening statement is largely within the discretion of the trial court. *State v. Brooks,* 618 S.W.2d 22, 24 (Mo.1981) (en banc). The purpose of the opening statement is not to test the sufficiency or the competence of the evidence, but rather "to inform the court and the jury in a general way of the nature of the case, the outline of the anticipated proof and the significance of the evidence as it is presented." *State v. Fleming,* 523 S.W.2d 849, 852–53 (Mo.App. 1975). *See also State v. Brooks, supra.* The *Fleming* court relies on Standard 7.4, Standards Relating to the Prosecution and Defense Function of the American Bar Association Project on Standards for Criminal Justice, and the accompanying commentary. That standard provides that defense counsel should confine the opening statement to a brief outline of the issues and the

---

**2.** That jury instruction contained the approved definition of "reasonable doubt" set forth in MAI–CR2d 2.20, 1984 Revision, and read in pertinent part:

> A reasonable doubt is a doubt based upon reason and common sense after careful and impartial consideration of all the evidence in the case.
>
> Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the de-

fendant's guilt. The law does not require proof that overcomes every possible doubt. If, after your consideration of all the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you will find him guilty. If you are not so convinced, you must give him the benefit of the doubt and find him not guilty.

matters which counsel believes the competent and admissible evidence will support.

■ Here, the prosecuting attorney objected to defendant's opening statement as improper comment on evidence that the defendant hoped to develop through cross-examination of the state's witnesses.[3] Under Missouri law, the defendant is not allowed to argue the credibility of the state's witnesses in the opening statement. *State v. Gibson,* 684 S.W.2d 413, 415 (Mo.App. 1984); *State v. Bibbs,* 634 S.W.2d 499, 501 (Mo.App.1982); *State v. Hurst,* 612 S.W.2d 846, 853 (Mo.App.1981); *State v. Ivory,* 609 S.W.2d 217, 222 (Mo.App.1980); *State v. Lankford,* 565 S.W.2d 737, 739 (Mo.App. 1978).

Defendant argues, in essence, that the only factual issue in this case was whether Mr. Knoche misidentified the defendant as the robber. Therefore, he continues, he had a right to frame that issue in a non-argumentative manner in opening statement. A fair reading of defense counsel's opening statement shows that the main thrust of the statement was to describe what defendant's evidence, including his own testimony, would be as contrasted with the state's evidence. Defense counsel did not say that she would rely upon testimony elicited from Mr. Knoche on cross-examination. That was the prosecutor's assumption. Of course, she was free to prove by other evidence what Mr. Knoche had told the investigation officers without asking him a single question. Defense counsel's opening statement was so innocuous that the prosecutor did not object until counsel had completely made her point in what turned out as two full pages of the transcript.

■ The purpose of the opening statement "is to introduce the jury to the nature of the cause before them...." *State v. Brooks, supra,* and to outline the proof and to point out the significance of the evidence. *State v. Bibbs, supra; State v. Lankford, supra;* and *State v. Fleming, supra.* In this case, defense counsel did not stray across the line into argument. She made a simple statement of what defendant's evidence would be as contrasted with the state's evidence. Where as here the only issue in the case is the identification or misidentification of the defendant, defense counsel is free to point out the significance of the difference between state's evidence and the defendant's, thus framing the issue. Here an opening statement about the evidence of defendant's true description would have been totally meaningless without reference to the contrasting evidence she could fairly anticipate the state would put on, that is, Mr. Knoche's description of his assailant. Defendant's entire defense was based upon the difference between Mr. Knoche's description and defendant's true description. Contrasting the state's evidence with the defendant's was designed only to point out the significance of the conflict in the evidence. Although that contrast is the basis for counsel's later argument, the mere description of the evidence that is in conflict is not yet argument.

■ In this case, however, we cannot charge the trial judge with an abuse of discretion because a reading of defense counsel's opening statement shows that she made a full statement of the contrasting evidence and clearly accomplished what

---

**3.** The Transcript shows the objection and ruling as follows:

> MR. QUINN: Could we approach the bench. (Counsel approached the bench and the following proceedings were had out of the hearing of the jury:)
> MR. QUINN: I would object to her opening statement. It constitutes cross-examination on statements that might come out during cross-examination.
> MS. SCHENKENBERG: The Defendant's entitled to tell the jury what he expects the evidence will be.

> THE COURT: Well, the opening statement entitles you to tell what you expect the evidence will be from your perspective and not to comment on what you expect the State's evidence will be. I assume that's what Mr. Quinn is talking about.
> MS. SCHENKENBERG: I expect to release from the State's witness his description of this man.
> THE COURT: Objection sustained.
> (The proceedings returned to open court.)

she had a right to do—to point out the significance of the evidence to come. Moreover, on this appeal, defendant does not tell the court what the trial court's ruling prevented his counsel from adding to the opening statement. Finally, the prosecutor's objection and the trial court's ruling were made outside the hearing of the jury so that defendant could not have been prejudiced by them. Therefore, defendant has no ground for his complaint in Point I.

## II.

Defendant next claims that by defining proof "beyond a reasonable doubt" as proof that leaves a juror "firmly convinced of a defendant's guilt", Missouri Approved Instructions MAI–CR2d 1.02 and MAI–CR2d 2.20 have reduced the state's burden of proof below that required by the Due Process clauses of Article I, § 10, of the Missouri Constitution and the Fourteenth Amendment of the United States Constitution.

Since this case was submitted, however, the Supreme Court of Missouri has upheld that MAI–CR definition in the face of the same due process challenges. *State v. Antwine*, No. 67720, slip op. at 19–21 (Mo. January 13, 1987) (en banc).[4] *See also State v. Galbraith*, 723 S.W.2d 55, 60–61 (Mo.App.1986).

## III.

In his last point, defendant urges that *State v. Williams*, 659 S.W.2d 778, 781–82

---

4. Remanded on February 17, 1987 to trial court for evidentiary hearing on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), issue, Missouri Supreme Court retaining jurisdiction.

5. The remarks at issue in the *Williams* case follow:

MR. MOSELY: It is not beyond any doubt whatsoever. It is not beyond a shadow of a doubt. It is beyond reason and common sense. And, I told you that you don't have to leave your common sense outside when you walk into the jury room.

Look at what the stories are. Look at who's telling the stories and look at the way they told the stories and then use your common sense and if your common sense tells you—

(Mo.1983) (en banc), requires reversal because the prosecutor impermissibly defined reasonable doubt in terms of a common sense standard and then, in effect, shifted the burden to the defense to "tell a reasonable story."

After surveying the recent decisions in point, *Williams* concludes (at 782),

[F]or a decision to be reversed on this ground, counsel must state a definition of "reasonable doubt" that is incorrect. Opposing counsel must object at that point or face a stricter standard of review on appeal under which only manifest injustice can merit reversal. If that objection is overruled, the offending counsel must then continue to define "reasonable doubt" for the jury.

In *Williams*, the Missouri Supreme Court held that the prosecutor's remarks [5] fell within the rule requiring reversal:

He attempted to define "reasonable doubt," stating his conception of it twice in the negative and then overtly characterizing the standard as "beyond reason and common sense." He then directed the jurors simply to use their common sense. After a timely objection, overruled by the court, counsel then proceeded to tell jurors that if their common sense told them that intercourse occurred, it was nonconsensual and forcible, and that therefore they must find the defendant guilty.

659 S.W.2d at 782.

The *Williams* court based its reversal in part upon the fact that the defendant's

MR. CREPEAU: I will object, the instruction says to use a reasonable doubt and I will object to the characterization that we have been hearing.

THE COURT: That objection will be overruled. Proceed.

MR. MOSELY: If your common sense tells you that on the morning of July 14th there was sexual intercourse, it was without the consent of Dianna McDowell, and it was accomplished by force, instruction number five says that you will find the Defendant guilty. Look at that instruction and look at the evidence and come back with your verdict. That's all we ask.

objection was overruled, giving the challenged comments the "imprimatur of the trial court." *Id.*, citing *State v. Jones*, 615 S.W.2d 416, 420 (Mo.1981). Because the evidence of guilt was sharply controverted and resolution of the conflict depended upon a determination of which witness to believe, the court refused to excuse the error as harmless: the state's remarks, endorsed by the trial court, could conceivably have improperly tipped the balance in favor of conviction. *Id.*

The present case can be distinguished from *Williams* and from *Jones, supra,* upon which the *Williams* court relied. In the *Jones* case, the court, after surveying the applicable law, based the reversal upon three decisive factors. First, the prosecutor undertook to define reasonable doubt in wholly erroneous terms—indicating that a "reasonable belief" satisfied the state's burden of proof. Second, the defendant's objection to the prosecutor's argument was overruled, giving the argument the imprimatur of the trial court. Third, the prosecutor repeated his erroneous definition of reasonable doubt after the defendant's objection was overruled. 615 S.W.2d at 420.

The circumstances of the present case more closely parallel those of *State v. Overkamp,* 646 S.W.2d 733, 738 (Mo.1983), where the prosecuting attorney made the following remarks:

> Reasonable doubt is just beyond a reasonable doubt. Well, what's reasonable? Reasonable is what the twelve of you determine is reasonable and you can apply your common sense to that and again I ask you to do so. Apply common sense to the facts in this case and determine what's reasonable or not. It is the state's theory of what happened based on the facts that are reasonable.

In *Overkamp,* the prosecutor directed the jury to apply common sense to the facts of the case. Here, the prosecutor advised the jury to use common sense in the jury room "to apply to the instructions of the law." The *Overkamp* language impliedly directs the jury to find the state's theory more reasonable than the defendant's. In the present case, the prosecutor directly stated, "I'll trust you to compare the reasonableness of Mr. Knoche's identification versus this Defendant's story."

The *Overkamp* court held that the challenged language constituted a permissible discussion of reasonable doubt. 646 S.W.2d at 738, citing *State v. Broomfield,* 637 S.W.2d 711, 714 (Mo.App.1981), and *State v. Fleming,* 577 S.W.2d 174, 176 (Mo. App.1979) (holding that a prosecutor may discuss reasonable doubt during closing argument so long as he does not erroneously define the term). *See also State v. Wynn,* 666 S.W.2d 862, 867 (Mo.App.1984); *State v. Wilbon,* 561 S.W.2d 133, 134 (Mo.App. 1978) (argument that every doubt is not a reasonable doubt was held to be permissible comment rather than an attempt to define reasonable doubt).

■ The present facts fall within the rule of *Overkamp.* Moreover, by instructing the jury to disregard the prosecutor's last statement, the trial court gave the defendant all the relief he requested, and in so doing, denied the challenged statements the imprimatur of the court. *Cf. Williams, supra,* 659 S.W.2d at 782, and *Jones, supra,* 615 S.W.2d at 420. The defendant made no motion for mistrial, but instead let the matter stand on the sustaining of his objection and the granting of relief by the trial court. He may not now complain. *Broomfield, supra,* 637 S.W.2d at 714. *See also State v. Allen,* 429 S.W.2d 697, 698–99 (Mo.1968); *State v. Granberry,* 530 S.W.2d 714, 727 (Mo.App.1975); *State v. Cissna,* 510 S.W.2d 780, 781 (Mo.App.1974).

Accordingly, we affirm the judgment of the trial court.

All concur.