**STATE of Missouri, Plaintiff–Respondent,**

v.

**Timothy CARTER, Defendant–Appellant.**

No. 61479.

Missouri Court of Appeals, Eastern District, Division Two.

Feb. 9, 1993.

Susan K. Eckles, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Hugh L. Marshall, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Judge.

A jury convicted defendant Timothy Carter of burglary in the first degree, § 569.-160, RSMo 1986, and the trial court sentenced him as a prior and persistent offender to ten years imprisonment. Defendant directly appeals this conviction. We affirm.

In March of 1991, Toshelle Kinsey went to stay with Robert Workes and Sharon Barton, her cousin. Toshelle had been having problems with her boyfriend, defendant Timothy Carter.

At approximately 5:15 on the morning of March 4, 1991, Toshelle was sleeping with her infant daughter, Brittany, on a couch in the front room. Toshelle was awakened by a voice at the front door and then heard someone kick the door. She ran into Robert and Sharon's bedroom to wake them.

While looking out the front door window, Robert saw four people walking from a small dark automobile toward his house. They came to the door and asked for Toshelle. Defendant began kicking the door. At this same time, Toshelle took Brittany into the kitchen and hid in a closet.

Robert held the door and told defendant to stop kicking. Defendant stated that he would pay for the damage. Robert responded that if he stopped kicking he would not have to pay for the damage. Defendant retorted, "If you don't move away from the door, I'll blow your fucking head off." Robert moved aside, and defendant kicked in the door.

Defendant entered the house with his three companions: Al Brown, Cedric Curry, and Toshelle's brother, DeAndre Gray. The quartet walked past Robert who then left to call the police from his brother's house next door. Defendant loudly called out for Toshelle and searched through the three main rooms. Defendant finally discovered Toshelle in the kitchen closet.

Defendant pulled Toshelle out of the closet. He grabbed her around the waist and walked her out the front door while she protested that she did not want to leave. Toshelle tried to grab Sharon's hand as defendant carried her down the front steps. Defendant took Toshelle to the car without her wearing a coat or shoes.

Defendant put Toshelle in the back seat of the car and drove off. After circling the block, defendant drove back to the house. Toshelle sent DeAndre inside to get her baby. DeAndre returned with Brittany and all four of the boys, Toshelle and Brittany drove off in the car.

When the police arrived on the scene, Sharon and Robert reported what had transpired. They gave descriptions of defendant and his companions, as well as defendant's car and license plate number. This information was relayed to a dispatcher who broadcast an all points bulletin to patrolling police vehicles.

About ten minutes later, police officer Alan Barton, who heard the broadcast, saw defendant's vehicle pass him in the opposite direction. Police officer Barton made a U-turn, pulled the vehicle over and radioed for backup. Once assisting officers arrived and the occupants exited the vehicle, Toshelle brought her baby back to the patrol car. Appearing upset, she told the officer that these individuals had dragged her and her child out of the house. Because neither were dressed warmly, the officer placed them in the patrol car. The four were taken into custody.

On April 4, 1991, defendant was indicted for two counts of false imprisonment, § 565.130, RSMo 1986, as well as, one count of first degree burglary. On December 12, 1991, a jury acquitted defendant of

the two counts of false imprisonment and returned a guilty verdict on the first degree burglary count. The court sentenced defendant to ten years imprisonment in the Missouri Department of Corrections as a prior and persistent offender on January 24, 1992. After the court denied defendant's motion for a new trial, a timely notice of appeal was filed. Defendant raises five points on appeal.

Defendant argues, in his first point, that the trial court erred by permitting the prosecutor to define "presumption of innocence" during voir dire. According to defendant, the prosecutor misstated the law of "presumption of innocence," improperly shifted the burden of proof to defendant and usurped the function of the court.

▮▮▮ While counsel should generally refrain from informing the jury about the law, counsel is not totally prohibited from mentioning the law. *State v. Corpier*, 793 S.W.2d 430, 444 (Mo.App.1990). Counsel may discuss the law without defining it and without stating any law applicable to the case which is not contained in the instructions. *Id.* This court will not intervene unless the trial court abuses its discretion by permitting argument calculated either to mislead, prejudice or conflict with the instructions. *Id.*

▮▮ Defendant contends that the following portion of the state's voir dire constituted a definition rather than a discussion of the presumption of innocence.

[T]he defendant, just like all defendants who sat here, is at this point in the proceeding presumed to be innocent. I'm sure you've all heard that idea. Now, that doesn't mean you have to find him innocent. What that means is at this point you start out with the assumption that he is, and you listen to what the evidence shows you.... In other words, there are some countries where as soon as a person is accused, they're assumed to be guilty, they've got to get theirselves [sic] out of trouble.

Defendant submits that this materially prejudiced his position and, in effect, shifted the burden of proof by implying that defendant was required to prove his innocence.

Reviewing this specific language in the context of the conversation in which the remarks were made, we find that the trial court did not abuse its discretion in allowing this discussion of the law. These remarks were made during the prosecutor's discussion with the venire panel about whether they could apply an instruction that conflicts with their personal beliefs about what the law should be. One particular venireperson had a difficult time grasping this distinction. So, the prosecutor offered the above as an illustration of what he meant.

The prosecutor did not attempt to define "presumption of innocence." He merely discussed the presumption of innocence as an example of how an instruction could defy a juror, particularly a foreigner, about what the law was. Nor was this statement calculated to mislead the panel. The prosecutor was trying to determine whether the venire members could commit themselves to follow the law before they knew the law.

The prosecutor did not imply that the presumption of innocence applied only at a certain point and did not shift the burden of proof to defendant. The language used accurately stated the law applicable to the case and was consistent with the instructions. Defendant's depiction of the remarks as burden shifting or prejudicial does not make them so. These statements were not calculated to prejudice the defendant. The trial court did not err in allowing the prosecutor's discussion of the presumption of innocence.

Defendant's second point states that the trial court erred by allowing the prosecutor to argue the difference between first and second degree burglary during his opening statement. Defendant asserts that the prosecutor's arguments improperly usurped the functions of both the court and jury by defining and applying the law to the facts of the case and permitting the jury to infer that defendant's guilt was already established.

▮▮ The scope and manner of opening statement is largely within the trial court's

discretion. *State v. Brooks*, 618 S.W.2d 22, 24 (Mo. banc 1981). The purpose of opening statement is to advise the jury of the nature and facts of the case and to outline the anticipated proof and the significance of the evidence to be presented. *State v. Harris*, 731 S.W.2d 846, 849 (Mo.App.1987).

The specific remarks about which defendant complains occurred during the following portion of the prosecutor's opening statement:

MR. TYSON (Prosecutor): The evidence will show first, that unlawful entrance was made into the residence of Robert Workes and Sharon Barton. That that unlawful entry was made for the purpose of falsely imprisoning Toshelle Kinsey; and that while this was happening, that makes it a Burglary First rather than a Burglary Second—

MS. CARADONNA (Defense Attorney): Your Honor, I'll object to argument.

COURT: I'll sustain the objection to that part.

MR. TYSON: While the burglary was occurring, there were people present in the house who were not a part of the crime.

MS. CARADONNA: Same objection, you Honor.

COURT: Well, I think that's a statement of fact. The charge, we'll cover that in the question. When he says there were people in the house, that's a statement of fact or evidence he anticipates as far as I can determine. Go ahead.

MR. TYSON: Besides the point that there was unlawful entry, there were also people present in the apartment, that being Robert Workes, Sharon Barton, Brittany and Toshelle Kinsey. The evidence is further going to show that Timothy Carter unlawfully restrained Toshelle Kinsey and her baby without their consent and did so in a manner—

MS. CARADONNA: Your Honor, I'll object to argument.

COURT: I assume that can be a fact. I'll overrule the objection.

MR. TYSON: And the evidence is going to show that he restrained them in such a

way that it substantially deprived them of their freedom for a period of time. Defendant contends that this constituted an impermissible defining of the law to the jury. Defendant urges that he was materially prejudiced because the prosecutor defined first degree burglary and explained the difference from second degree burglary. He further argues that the prosecutor's applying the facts to this law usurped the role of the jury and the court.

■ Because the trial court sustained the objection to the prosecutor's distinction between first and second degree burglary and defendant requested no further relief, the first part of defendant's argument fails. Defendant may not now complain because he let the matter stand after his objection was sustained. *See Harris*, 731 S.W.2d at 852.

■ Defendant's argument that the subsequent remarks were an improper definition of the law because they tracked the statutory elements and constituted an application of facts to law is without merit. As the trial court noted, these were statements of fact the prosecutor anticipated proving during trial. Although the prosecutor predicted facts that would satisfy the statutory definition of first degree burglary, the remarks did not usurp the function of the court or jury by applying the facts to the law or implying that defendant's guilt was already established. Moreover, the trial court could have directed a verdict of acquittal without hearing any evidence if the prosecutor failed to state facts in his opening which, if proved, would be sufficient to convict the defendant. *State v. Brigham*, 709 S.W.2d 917, 923 (Mo.App. 1986). All of the remarks were either permissible statements of facts the prosecutor intended to prove or properly excluded by the trial court's sustaining defendant's objection. Thus, the trial court did not err in allowing this colloquy.

In his third point, defendant argues that the trial court erred by allowing the prosecutor to refer to defendant's failure to testify during cross-examination of Cedric Curry. According to defendant, the prose-

cutor's remarks constituted a reference to defendant's failure to testify by implying that he was not testifying because of prior convictions.

■■■ The Fifth Amendment to the United States Constitution, Article I, Section 19 of the Missouri Constitution, and Rule 27.05 guarantee criminal defendants the right not to testify and forbid comments by others on this right, including direct and indirect references to a defendant's failure to testify. *State v. Parkus*, 753 S.W.2d 881, 885 (Mo. banc 1988), *cert. denied*, 488 U.S. 900, 109 S.Ct. 248, 102 L.Ed.2d 237 (1988). Indirect references are those that cause the jury to infer that the challenged remark, viewed in context, constitutes a comment on the defendant's failure to testify. *Id.* The trial court has wide discretion in determining what constitutes an impermissible reference, and it occupies the best position to observe the effect of contested statements on the jury. *Id.*

■■■ Defendant contends that the prosecutor indirectly referred to defendant's failure to testify during the prosecutor's cross-examination of Cedric Curry. Curry, who had also been charged with committing the same crimes for which defendant was on trial, testified on direct examination that another one of the four, Al Brown, kicked in the door. Defendant complains of the following questions the prosecutor asked this witness on cross-examination:

MR. TYSON: Have you got any prior convictions?

CURRY: No.

MR. TYSON: No, you don't, so you're in here testifying today, is that correct?

CURRY: Yes.

MR. TYSON: And you're testifying for your buddy here who's being tried with the same charge you are, right?

CURRY: Yes.

Defendant contends that this line of questioning permitted the jury to infer that defendant was not testifying because of his prior convictions. Defendant submits that he was materially prejudiced because the jury was allowed to infer that defendant had a criminal disposition and more likely to have committed this crime.

Viewing these questions in the larger context of the prosecutor's cross-examination, *State v. Thurlo*, 830 S.W.2d 891, 892 (Mo.App.1992), we find that the prosecutor did not "clearly draw the jury's attention to the defendant's failure to testify." *State v. Bulloch*, 785 S.W.2d 753, 755 (Mo.App. 1990). The prosecutor was attempting to develop the witness' motive to lie on the stand. The prosecutor's remarks were references to Curry's hope of exonerating defendant so that Curry might gain a more favorable position at his own trial. Relying on the trial court's superior vantage point in gauging the effect of these remarks on the jury, we agree with the trial court's statement that it did not think that the jury would make the connection defendant advocates.

■■■ Defendant refused the trial court's offer to instruct the jury to disregard the prosecutor's remarks and instead insisted the trial court declare a mistrial. The drastic remedy of declaring a mistrial should be granted only in those circumstances where the incident is so grievous that the prejudicial effect can be removed no other way. *Thurlo*, 830 S.W.2d at 893. The trial court's decision not to declare a mistrial is reviewed only for an abuse of discretion. *Id.* at 891. The trial court did not abuse its discretion in refusing to grant a mistrial. The effect of these statements was curable by an instruction to the jury because, in light of the entire record, they do not appear "prejudicial and highly impressive." *Id.* The trial court did not err in denying defendant's request for a mistrial.

Defendant's fourth point states that the trial court erred in not permitting defense counsel to question witness DeAndre Gray about Gray's juvenile court adjudication of charges stemming from defendant's case. Defendant argues that Gray's testimony would have shown that because Gray's juvenile court case was resolved in his favor, his testimony would have supported defendant's defense. Defendant asserts that the exclusion of this testimony was prejudicial.

Gray testified on defendant's behalf that Al Brown kicked in the door. Defense counsel questioned Gray about whether he was arrested and "taken down to Juvenile." Defense counsel then asked, "What happened to you at Juvenile?" The trial court then sustained the prosecutor's objection that this inquiry was irrelevant to defendant's case. Defendant now submits that the resolution of Gray's juvenile case was relevant and admissible to help demonstrate that defendant did not commit the crimes charged.

■■■ Evidence of either the conviction or acquittal of one jointly accused with a defendant is inadmissible as substantive evidence of defendant's guilt or innocence. *State v. Johnson*, 787 S.W.2d 872, 874 (Mo. App.1990); *State v. Clark*, 646 S.W.2d 409, 411 (Mo.App.1983). Gray's juvenile case arose out of the same incident as this case. The fact that Gray was cleared of any juvenile charges, however, is "wholly irrelevant to any issue in defendant's trial." *State v. Hall*, 687 S.W.2d 924, 927 (Mo. App.1985). The resolution of Gray's case in his favor does not tend to prove or disprove whether defendant kicked in the door. The trial court did not err in precluding defense counsel from eliciting this evidence.

Defendant argues, in his final point, that the trial court erred in allowing the state to elicit testimony from Toshelle Kinsey regarding an alleged previous violent act of defendant. Defendant contends that Toshelle's testimony was irrelevant, inadmissible, its prejudicial impact outweighed its probative value, and could only have been countered by defendant's testimony, which was not given pursuant to his right against self-incrimination.

The prosecutor elicited testimony from Toshelle that she had lived with defendant before moving in with Robert Workes and Sharon Barton. The prosecutor asked Toshelle why she left defendant and defense counsel objected that this was irrelevant. The trial court overruled the objection because the testimony was relevant to show defendant's motive and to show whether Toshelle willingly accompanied defendant

out of Robert Workes' home. Toshelle then testified that she moved out because defendant had hit her.

■■■ Evidence of separate, distinct and unrelated crimes is generally inadmissible unless the evidence has a legitimate tendency to establish a defendant's guilt of the crime charged. *State v. Henderson*, 826 S.W.2d 371, 374 (Mo.App.1992). However, if the separate and distinct crimes tend to establish motive, intent, absence of mistake or accident, a common scheme or plan, identity or the *res gestae*, evidence of separate offenses is admissible. *Id.*

■■■ The evidence of defendant hitting Toshelle was relevant to demonstrate defendant's motive in using force to enter Robert Workes' home. In light of the fact that Toshelle had recently left defendant and sought sanctuary with Sharon Barton and Robert Workes, the evidence that defendant hit Toshelle demonstrates why defendant would kick the door in rather than attempt to enter peacefully. *See State v. Smith*, 772 S.W.2d 760, 764 (Mo.App.1989) (evidence of defendant's sexual abuse of daughter admissible in burglary prosecution to show why daughter moved away from home and to show motive for defendant's violent break-in). Wide latitude is generally allowed when developing evidence of motive. *State v. Mallett*, 732 S.W.2d 527, 535 (Mo. banc 1987).

Moreover, the evidence of defendant hitting Toshelle was relevant to show whether Toshelle voluntarily accompanied defendant out of the house. This evidence tended to prove that Toshelle had reason to not consent and did not willingly leave with defendant. The trial court did not err in allowing this evidence.

The judgment of the trial court is Affirmed.

CRANDALL, P.J., and GRIMM, J., concur.